579 So.2d 453 (1991)
Shirley SAVIN and David Savin
v.
ALLSTATE INSURANCE COMPANY and Chad M. Martin.
No. 90 CA 0079.
Court of Appeal of Louisiana, First Circuit.
March 28, 1991.
Rehearing Denied May 20, 1991.
*454 Jerald P. Block, Thibodaux, for plaintiffs-appellants Shirley Savin and David Savin.
Stephen M. LaRussa, Houma, for defendants-appellees Allstate Ins. Co., Chad M. Martin.
Before EDWARDS, WATKINS and LeBLANC, JJ.
WATKINS, Judge.
This wrongful death action is the aftermath of a one-car accident which claimed two lives and left the only survivor with traumatic amnesia. A lengthy jury trial and two post-trial procedures resulted in a judgment for defendants, Chad Martin and his insurer, Allstate Insurance Company (Allstate).

THE ACCIDENT
On January 11, 1986, the driver of an automobile owned by Chad Martin[1] apparently lost control, left the highway, and entered the adjacent waters of Bayou La-Fourche. Two of the three occupants, Chad Martin and Chad Savin, were ejected from the car, and they were pulled from the water by rescuers. Chad Savin died a short while later as medical care providers attempted to transfer him to a hospital in New Orleans, Louisiana. The third occupant of the car, Ernest J. Palermo, drowned in the vehicle. The sole survivor, Chad Martin, has no memory of the accident or of any events immediately prior to the accident.

THE TRIAL
Chad Savin's parents, David and Shirley Savin, sued Chad Martin and Allstate, the insurer of the Martin vehicle. Another claim was filed by Chad Martin for his own injuries, and still another by Ernest Palermo's widow. At trial, but prior to the return of the jury's verdict, the Martin claim and the Palermo claim were settled.
The pivotal issue at trial was: who was driving the Martin vehicle at the time of the accident? The parties stipulated that Ernest Palermo was not driving. The stipulation left two possibilities: Chad Martin or Chad Savin.
In support of their contention that Chad Martin was driving, plaintiffs called Louisiana State Trooper Dana Harrison. He testified that after an investigation at the accident scene, he proceeded to Our Lady of the Sea Hospital. Once at the hospital, Trooper Harrison received permission to talk to Chad Martin whom he had already identified as the owner of the vehicle. Trooper Harrison testified that Chad Martin admitted driving his vehicle at the time of the accident.
In defense, Chad Martin and Allstate presented the testimony of two persons who stated that they heard Chad Martin say that Chad Savin had been driving. Mr. Louis "Pookie" Rousse, a relative of the Martins, went to the hospital when he heard about the accident. He testified as follows:
Q. And you were also there, I understand, when the state trooper came in?
A. Yes, sir.
Q. And while you were there, did you hear any conversation between the state trooper and Chad Martin?
A. Yes, sir.
Q. Can you tell us what parts you heard?
A. I heard that the state trooper asked Chad Martin who was driving and Chad said, "Chad." And the state trooper said, "Chad

*455 Q. Okay, let's stop for a moment. The state trooper asked Chad Martin who was driving and Chad Martin said, "Chad"?
A. Yes, sir.
Q. Please continue.
A. And the state trooper said, "What's your name?" He said, "Chad Martin." He said, "Chad, was it your car", and Chad said "Yes." He says, "You were driving your car?" He said, "It was your car." And Chad said, "Yes, no, I don't know."
Ms. Martin Esposito was a nurse on duty in the hospital emergency room at the time the accident victims arrived there. She testified that she heard Chad Martin tell Trooper Harrison that Chad Savin had been driving.
The defense also called Ms. Michele Barrios, who testified that she had seen the young men at the "Lights Fantastic," a local nightclub, prior to the accident. She told of seeing Chad Savin "doing doughnuts" with Chad Martin's car in the parking lot of the nightclub earlier in the evening of the day preceding the accident. Additionally, she testified that she saw Chad Savin in the driver's seat of the Martin vehicle shortly before the accident.
In rebuttal, the plaintiffs called Mr. Randy Trosclair, who was at The Boat Shed Lounge on the night of January 10, 1986. Mr. Trosclair testified to seeing and talking with Chad Savin at The Boat Shed Lounge at a time when Ms. Barrios's testimony had placed him at the Lights Fantastic.
Additionally, the plaintiffs in rebuttal recalled Chad Martin under cross examination and questioned him concerning his memory of events prior to the accident. Mr. Martin reiterated that he could remember some things, but that because of his traumatic amnesia, he was unable to recall everything about the day before the accident.
Concerning the defendant's claim of traumatic amnesia, the defense introduced the testimony of an expert witness, Dr. Chester Scrignar. Prior to trial Dr. Scrignar, a psychiatrist, used hypnosis on Chad Martin in an attempt to restore his memory. During the early part of the trial, the defense contemplated having the doctor hypnotize Mr. Martin in front of the jury. However, the defense withdrew its request for the hypnosis demonstration and the witness was excused. Therefore, although the jury was informed through defense counsel's argument and through Dr. Scrignar's testimony that Mr. Martin had been placed under hypnosis and questioned about the accident, the jury did not hear either from Chad Martin or from the psychiatrist what Chad Martin said about the accident while he was under hypnosis.
By a nine to three vote, the jury responded to a jury interrogatory as follows:
1) Was Chad Martin driving the vehicle at the time of the accident?
___ Yes X No
Despite the negative response to the above question, the jury found that Chad Martin was fifty percent at fault in causing the death of Chad Savin. The jury made an award to Mr. and Mrs. Savin of compensatory and exemplary damages.
After the trial, upon motion by the defendants for judgment notwithstanding the verdict, the trial court overturned the awards to the plaintiffs. Subsequent to that judgment, the plaintiffs filed a motion for a new trial, which was denied by the trial court.

TRIAL COURT ERRORS
On appeal, the plaintiffs have urged ten errors, as follows:
1. The jury verdict was manifestly erroneous in determining that the defendant, Chad Martin, was not driving his vehicle at the time of the accident.
2. The jury instructions were inadequate and erroneous resulting in an improper jury determination concerning the issue as to which person was driving the Martin vehicle.
3. In spite of plaintiffs' objections, the trial court improperly allowed prejudicial testimony of the psychiatrist-hypnotist.
4. In order to balance the equities, the trial court should have provided cautionary instructions to the jury with regard *456 to the unreliability which is necessarily associated with hypnosis and hypnotic demonstrations.
5. The trial court erred in denying the plaintiffs' motion for a mistrial which pertained to the prejudicial effect that the testimony of the psychiatrist-hypnotist had on the jury.
6. The trial court should have granted plaintiffs' motion for a mistrial after defense counsel, in his opening statement, violated the trial court's instructions and orders regarding the issue of hypnosis.
7. The trial court erroneously granted a judgment notwithstanding the verdict on the issue of negligent entrustment and exemplary damages.
8. Defense counsel's remarks and arguments were unprofessional and served no legitimate purpose, thereby constituting prejudicial error.
9. Prior to trial, the trial court erred in refusing to order the production of statements of witnesses which were taken by or on behalf of the defendant-insurer.
10. The trial judge committed manifest and reversible error in not granting the appellant a new trial, since the jury's finding on the identity of the driver was clearly contrary to the law and the evidence.
Errors 3, 4, 5 and 6 deal with the effect upon the jury of references at trial to the subject of hypnosis. The trial judge ruled in limine that he would not allow any reference to expert opinion by a physician as to who was driving the vehicle and that the subject was not to be mentioned during the opening statement. The trial judge stated that he did not believe in "putting the bug in the jury's mind in a sensitive area like the area of expert hypnotism testimony...."
Once the trial court ruled that Dr. Scrignar's testimony about what Chad Martin said under hypnosis would be inadmissible hearsay, the defense tried a different approach. The defense proposed that Dr. Scrignar would hypnotize Chad Martin in front of the jury. After the trial court permitted the jury to hear questioning of Dr. Scrignar about the proposed demonstration, the defense withdrew its request to perform the demonstration.
On appeal the plaintiffs urge that the testimony by Dr. Scrignar never should have been elicited before the jury. We agree with the plaintiffs that the trial judge had numerous opportunities to sustain plaintiffs' objections to the hypnosis issue. Instead, the trial judge erroneously allowed the testimony to continue, prejudicing the jury on the crucial issue of whether Chad Martin had been driving the vehicle at the time of the accident.
We conclude that it would have been error for the trial court to permit Chad Martin to be hypnotized in front of the jury. Pretermitting any considerations of the reliability of the testimony of a person who is under hypnosis, we find that the demonstration would have impeded or prevented entirely effective cross examination of Chad Martin by counsel for plaintiffs. The trial court should have allowed examination of the psychiatrist outside of the presence of the jury on the issue of the demonstration, and the trial court should have ruled on the admissibility of the demonstration without allowing the jury to hear about the proposed demonstration.
We conclude that the references to the previous hypnosis and the anticipated demonstration could have only one effect on a reasonable jury: to suggest the inference that Chad Martin had testified previously under hypnosis and would testify again under hypnosis that he was not driving his vehicle on the night of the accident.[2] Reasonable *457 jury members could not assign any other motive to the defense's pursuit of the hypnosis demonstration.
Accordingly, we hold that the trial court committed error in allowing the jury to hear numerous references to the hypnosis performed on Chad Martin prior to trial and to the anticipated demonstration of hypnosis at trial. The error by the trial court is reversible error; it probably prejudiced the jury in answering, not a mere collateral question, but the question which was the crux of the case, specifically the identity of the driver. See Schwamb v. Delta Air Lines, Inc., 516 So.2d 452 (La. App. 1st Cir.1987), writs denied, 520 So.2d 750 (La.1988).
The trial court granted the JNOV holding that there was no evidence to support the jury's finding that Chad Martin was fifty percent at fault and that, therefore, he was liable for compensatory and exemplary damages. The trial court's reversal of the jury's findings in regard to the fault of Chad Martin was based upon the jury's finding that he was not the driver of the automobile. As a result the trial court's reasons and conclusions in granting the JNOV assumed as an established fact that Chad Martin was not the driver. Our reversal of the jury's determination of this critical factual issue has removed the factual basis that supports the granting of the JNOV. It follows, therefore, that the JNOV must be vacated and set aside.

DISPOSITION ON APPEAL
Reversible error which interdicts a jury verdict requires us to set aside the verdict in its entirety.[3]
Having set aside the judgment of the trial court rendered pursuant to the jury verdict, we now reach the question of whether to consider the trial record and reach a decision of our own on the merits or to remand for a new trial.
In making our choice of action, we are guided by the Louisiana Supreme Court's explanation in Ragas v. Argonaut Southwest Ins. Co., 388 So.2d 707, 708 (La.1980):
Where a finding of fact is interdicted because of some legal error implicit in the fact finding process or when a mistake of law forecloses any finding of fact, and where the record is otherwise complete, the appellate court should, if it can, render judgment on the record.
This is not to say, and Gonzales [v. Xerox Corporation, 320 So.2d 163 (La.1975)] should not be read to require, that the appellate court must find its own facts in every such case. There are cases where the weight of the evidence is so nearly equal that a firsthand view of witnesses is essential to a fair resolution of the issues. The appellate court must itself decide whether the record is such that the court can fairly find a preponderance of the evidence from the cold record. Where a view of the witnesses is essential to a fair resolution of conflicting evidence, the case should be remanded for a new trial.
We find the trial testimony in the instant case similar to the testimony we reviewed in Tabor v. Doctors Memorial Hospital, 501 So.2d 243 (La.App. 1st Cir.1986); the evidence is in substantial conflict. Here, as in Tabor, a preponderance of the evidence cannot be fairly determined from the cold record. It is impossible for us to determine which of the two young men was driving at the time of the accident without deciding on the credibility of the witnesses. A judge or jury with the opportunity to hear and see the witnesses is in a better position to resolve this factual issue than an appellate court. The record presents the state trooper saying one thing and the two defense witnesses who were at the hospital saying something else; the young lady at the Lights Fantastic saying one thing and the man at The Boat Shed Lounge saying something else. With the record presenting substantial conflicts in the testimony and numerous credibility calls, we are convinced that the interests of justice will best *458 be served by remanding this case for a new trial.

ERROR NUMBER 9
A final assignment of error requires our attention. If the parties try this case again, they are entitled to know our opinion on the refusal of the trial court to order the production of statements taken by or on behalf of Allstate.
In 1987, the trial judge signed a judgment which denied the plaintiffs' motion seeking the production of ten statements taken by or on behalf of Allstate. Plaintiffs filed a motion to compel production of the statements along with their petition for damages on March 10, 1989. Allstate objected, claiming that the information requested was privileged as having been obtained in anticipation of litigation. The statements sought were made by individuals who were independent witnesses and not parties to the litigation. The statements in the possession of the defendant were taken shortly after the instant accident. We agree with plaintiffs that statements made almost contemporaneously with the occurrence are in a sense unique and cannot be duplicated by statements taken at a later date or by deposition, but plaintiffs have failed to show prejudice because their motion to produce was filed a mere two months after the accident. The persons listed by Allstate as having given statements were, under the circumstances of this case, just as available to the plaintiffs as they were to the insurer shortly after the accident.
In urging this assignment of error, the plaintiffs rely on the case of Ogea v. Jacobs, 344 So.2d 953 (La.1977). Although the Ogea court ruled in favor of production of statements taken by the plaintiff's employer, the court noted that the mere lapse of time does not, in every case, require production to avoid unfairly prejudicing the preparation of the opponent's case or causing undue hardship or injustice. The statements in Ogea were gathered by an eye-witness agent of the defendant from other witnesses under his supervision. Since Allstate did not exercise in this case the exclusive control over the persons making the statements that was exercised by the defendant in Ogea, we do not find its ruling controlling. Accordingly, we find no error in the trial court's refusal to compel production of the statements.
For the foregoing reasons, we reverse the judgment of the trial court and remand this case for a new trial. We cast defendants-appellees for costs of this appeal.
REVERSED AND REMANDED.
NOTES
[1] Although the Martin vehicle was registered and insured in the name of Chad Martin's father, Gary Martin, it was not seriously disputed that the vehicle was owned by Chad Martin.
[2] Confirming this conclusion are defendants' counsel's remarks during closing arguments:

Dr. Scrignar testified and told me, and you heard it, how traumatic this would be to put the boy through it again, and I chose not to. I chose that there are things more important sometimes than doing every little conceivable thing that you, as an attorney, feel has to be done. All right? And I accept the consequences on whatever that is. But, I think you know the truth. You see, the truth, you can't hide it. It has a way of surfacing sometimes. I think you know why Dr. Scrignar was here, and I couldn't bring up and I'm not allowed to go into what happened before, but I think you know the truth. I think you know what he would have indicated.
[3] Pursuant to our decision, the errors alleged by plaintiffs dealing with the judgment notwithstanding the verdict do not require discussion.