711 So.2d 727 (1998)
Lyle VARDAMAN, et ux., Harold Turner, et ux., Ernie Pierce, et ux., Lester Berry, individually and on behalf of Jory Berry, Elizabeth Berry, and Susan Crowe
v.
BAKER CENTER, INC. and Velsicol Chemical Company.
No. 96 CA 2611.
Court of Appeal of Louisiana, First Circuit.
March 13, 1998.
*728 Kevin Patrick Monahan, Baton Rouge, for Plaintiffs-Appellant Lyle Vardaman, et al.
J. Thaddeus Westholz, Diane Kathleen O'Hara, Hulse and Wanek, New Orleans, for Defendant-Appellee Baker Center, Inc.
Amos H. Davis, Smith and Davis, Baton Rouge, for Defendant-Appellee Interstate Fire and Casualty Company.
Michael G. Durand, Gary P. Kraus, Onebane, Bernard, Tortan, Diaz, McNamara and Abell, Lafayette, for Defendant-Appellee Willie's Exterminating Company.
Before GONZALES and PARRO, JJ., and TYSON, J. Pro Tem.[1]
PARRO, Judge.
This is an appeal from the trial court's judgment, granting motions for summary judgment in favor of all defendants and dismissing plaintiffs' claims that they suffered mental and physical health problems as a result of exposure to chlordane. We affirm.

FACTUAL AND PROCEDURAL HISTORY
The plaintiffs in this case include Lyle and Irma Lewis Vardaman, Lyle Vardaman on behalf of his minor son, James Lutrick Vardaman,[2] Harold and Juanita Turner, Ernie and Jane Pierce, Lester and Elizabeth Berry, Lester Berry on behalf of his minor son, Jory Scott Berry, and Susan Crowe. They allege that Irma Lewis Vardaman, Juanita Turner, Ernie Pierce, Lester Berry, Elizabeth Berry, Jory Scott Berry, and Susan Crowe all worked at a furniture store when the building was treated with a pesticide containing chlordane. They claim their exposure to this chemical caused them various mental and physical health problems and caused their families to experience loss of consortium.
In August 1988, the plaintiffs sued Baker Center, Inc. (Baker Center), the owner of the furniture store premises, and Velsicol Chemical Company (Velsicol), the manufacturer of the pesticide. Willie's Exterminating Company (Willie's), the company which treated the premises for termites, and Interstate Fire and Casualty Insurance Company (Interstate), the liability insurer of Willie's, were added as defendants in a supplemental and amending petition.[3]
The case had been pending for over five years when, in March 1994, Velsicol filed requests for admissions. Among other things, these asked plaintiffs to admit that 1) no doctor had opined their chlordane exposure was sufficient to cause any physical or mental injury, 2) they had no evidence proving exposure to chlordane in sufficient quantities to cause injury, and 3) they had no *729 evidence establishing any of their physical or mental problems were caused by exposure to chlordane. The plaintiffs did not answer or object to any of the requests for admissions for over a year.
In July 1995, Velsicol moved for summary judgment on the basis that the above facts were deemed admitted because the plaintiffs had not responded to its requests for admissions. The motion alleged that, given these admitted facts, the plaintiffs could not support their claims that exposure to chlordane caused their injuries. The other defendants then filed similar motions for summary judgment, and all motions were set for hearing. The day before the hearing, the plaintiffs moved for a continuance, claiming additional time was needed to get affidavits from medical experts who had treated or tested them. Attached to the motion were uncertified copies of medical reports, letters from physicians, and unverified lab test results. The trial court granted a thirty-day continuance. The day before the re-scheduled hearing, the plaintiffs answered the requests for admissions, denying the statements upon which the motions for summary judgment were based. Also, although the plaintiffs did not submit affidavits from any medical experts at the hearing and did not file them into the record at this time, certain affidavits were apparently made available to opposing counsel, along with the denials of the requests for admissions.[4]
At the hearing, because of the plaintiffs' late responses to the requests for admissions, the court allowed Willie's an additional ten days to provide a supplemental memorandum in support of its motion for summary judgment. Willie's filed an additional memorandum and attached the affidavit of Dr. Michael James Wernke, a toxicologist/pharmacologist. Dr. Wernke had reviewed the plaintiffs' petitions and available medical records and lab test results, along with affidavits from physicians who had examined the plaintiffs. He cited studies showing that the general population in the United States has detectable levels of chlordane-related substances in blood and adipose tissue because of its presence in air, food, and water from numerous sources. Based on the lab test results submitted by the plaintiffs, Dr. Wernke noted that the concentrations of chlordane-related chemicals shown in their body tissues were below or within the levels reported for the general United States population who had not experienced an unusual environmental or occupational exposure to chlordane. Because of this, Dr. Wernke concluded that neither the plaintiffs nor their experts could pinpoint the source of their exposures with any degree of scientific or medical certainty. Most significantly, he stated the concentrations of these substances in the plaintiffs' blood and adipose tissue samples had not been shown in the medical and scientific literature to cause adverse health effects.
Dr. Wernke's affidavit referred to affidavits from plaintiffs' experts, which he obviously had reviewed. However, these affidavits were not in the record until several months after the hearing, when they were filed by plaintiffs' counsel in an "appearance filing" while the motions were still under advisement.
The trial court did not grant the motions on the basis of the facts deemed admitted by virtue of the plaintiffs' failure to respond timely to Velsicol's requests for admissions. Rather, the court reviewed the affidavits and other evidence submitted by the parties after the hearing. Based on this evidence, the court granted the motions for summary judgment and dismissed all of plaintiffs' claims against the defendants, finding that:
[T]he plaintiffs did not submit sufficient expert testimony to show that the claimed damages were a result of the chlordane exposure they claim occurred at the Baker Center. The Court does not believe that the evidence submitted by the plaintiffs *730 meets the test set forth in Foret and Daubert. In addition, the affidavit of Dr. Wernke establishes that plaintiffs' (sic) cannot show a causal connection between the alleged injuries and an exposure to chlordane. Also, plaintiffs' experts have ignored other alternative explanations for the alleged symptoms.
The judgment was signed on February 13, 1996, and this appeal followed.
The plaintiffs contend the trial court erred in determining they did not submit sufficient expert testimony and in improperly weighing affidavits as to the medical evidence of causation between chlordane exposure and plaintiffs' injuries. In support of this claim, they argue the court should not have allowed the defendants to present an expert's affidavit "ex post facto," addressed to the inadequacy of the plaintiffs' experts' conclusions and lack of scientific methodology.

ANALYSIS

Summary Judgment Procedure
A party may move for a summary judgment in its favor, with or without supporting affidavits. LSA-C.C.P. art. 966(A)(1). The motion for summary judgment and supporting affidavits, if any, shall be served at least ten days before the time specified for the hearing. The adverse party may serve opposing affidavits prior to the date of the hearing. LSA-C.C.P. art. 966(B). The appropriate process for summary judgment is to file the motion for summary judgment and to attach to the motion any depositions, answers to interrogatories, admissions, and affidavits which the moving party wishes to have considered. Anderson v. Allstate Ins. Co., 93-1102 (La.App. 1st Cir. 4/8/94), 642 So.2d 208, 213, writ denied, 94-2400 (La. 11/29/94), 646 So.2d 404. The requirement of LSA-C.C.P. art. 966(B) that the motion for summary judgment be served at least ten days before the time specified for the hearing is designed to give fair notice of the evidentiary and legal bases for the motion. The adverse party then has time to respond with evidentiary documentation of its own, either in the form of affidavits or discovery devices, and to be prepared to meet the legal argument of the moving party. Anderson, 642 So.2d at 213.
The summary judgment provisions were amended in 1996 to remove the presumption against granting summary judgments and provide that summary judgments are now favored. 1996 La.Acts, 1st Ex.Sess., No. 9, § 1; LSA-C.C.P. art. 966(A)(2). Further amendments in 1997 clarified the burden of proof which had to be met in order to establish the mover's right to summary judgment. 1997 La.Acts 483, §§ 1 and 3; LSA-C.C.P. art. 966(C) and (E). However, these amendments did not alter the sequential provisions, in which the party moving for summary judgment is required to present its proof first, then the opposing party may submit evidence before the hearing date. If the mover will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the mover meets its initial burden of proof if its documents show the court that there is an absence of factual support for one or more elements essential to the adverse party's claim. LSA-C.C.P. 966(C)(2). Once the mover has made this showing, to defeat the motion, the adverse party must then come forward and show the court it has factual support sufficient to establish it will be able to satisfy its evidentiary burden of proof at trial on each element of the claim. LSA-C.C.P. 966(C)(2).
As this court noted in the Anderson case, the obvious purpose of this sequence is to give the party against whom the motion is brought the information needed to oppose it. If the mover's argument and proof are not available to the adverse party before the hearing on the motion, there is no opportunity for the adverse party to effectively controvert it. In the case we are reviewing, the defendants' entire argument changed after the requests for admissions were denied by the plaintiffs on the day before the hearing. Because the defendants did not submit their expert's affidavit before the hearing on the motions for summary judgment, there was no opportunity for the plaintiffs to demonstrate to the court that they could provide proof of the elements of their claim which this affidavit *731 attacked.[5] The trial court should not have reviewed this affidavit at all, because it came into the record after the hearing on the motions.
Neither should the court have considered the plaintiffs' affidavits, since these were also untimely, being filed several months after the hearing. The only documents in the record from the plaintiffs before the hearing date were unverified letters, lab tests, and medical evaluations. Also, the affidavits which were eventually submitted by the plaintiffs did not provide the court with any information concerning the qualifications of the physicians who submitted them and, as noted by the trial court, did not meet the Foret and Daubert requirements for admissibility, in that they did not contain any information about the methodology the physicians used in reaching their conclusions.[6] Because the trial court based its judgment on documents not properly before it, its judgment on that basis was in error.

Requests for Admissions
However, the trial court ignored the basis upon which the defendants' motions were originally filed, namely the facts that were deemed admitted as a result of the plaintiffs' failure to respond to certain requests for admissions. A party may serve upon any other party a written request for the admission of the truth of any relevant matters of fact. LSA-C.C.P. art. 1466. Generally, the matter is deemed admitted if the party to whom the request is directed does not respond within fifteen days after service of the request.[7] LSA-C.C.P. art. 1467. Any matter deemed admitted under Article 1467 is conclusively established unless the court, on motion, permits withdrawal or amendment of the admission. LSA-C.C.P. art. 1468. The court may permit withdrawal of an admission when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal of the admission will prejudice him in maintaining his action or defense on the merits. LSA-C.C.P. art. 1468.
Although an admission made by a party is only for the purpose of the pending action, use of these articles is not limited to the party who requested the admissions. Smith v. Cumis Ins. Society, Inc., 417 So.2d 1361, 1362 (La.App. 4th Cir.1982). Accordingly, an admission that is the result of one party's request for admissions may inure to the benefit of other parties to the same litigation.
Additionally, admissions may be used to establish a controversial issue constituting the crux of the matter in litigation. See Succession of Rock v. Allstate Life Ins. Co., 340 So.2d 1325 (La.1976). In Succession of Rock, the Louisiana Supreme Court reviewed a default judgment based, in part, on contract provisions which were deemed admitted by virtue of the defendant's failure to respond to a request for admissions. The defendant argued that such a judgment could not be rendered because the actual contract had not been entered into the record. In ruling on this argument, the court stated:
All of the salient contract provisions upon which plaintiff's suit is based are part of the request for admissions. The requirement that the contract be made part of the *732 record to support this default judgment is supplied by the admission of facts resulting from Allstate's failure to deny the matters of which an admission was requested.
Succession of Rock, 340 So.2d at 1329. In enforcing the contract provisions against the defendant, the supreme court emphasized the "clear and unequivocal" language of the code articles and noted the defendant had not utilized any of the means provided to prevent admission of these key facts. Therefore, the admissions were facts of record which the courts must recognize. Succession of Rock, 340 So.2d at 1331.
Generally, the courts have given full effect to Articles 1467 and 1468 when, as in Succession of Rock, there has been a total lack of response to requests for admissions. See, e.g., Remondet v. Reserve Nat'l Ins. Co., 433 So.2d 792 (La.App. 5th Cir.), writ denied, 441 So.2d 216 (La.1983); Larkin v. First of Georgia Underwriters, 466 So.2d 655 (La.App. 5th Cir.1985); Villescas v. T.J. Ward General Contractors, Inc., 504 So.2d 641 (La.App. 4th Cir.1987); Bellina v. Lazzara, 576 So.2d 1221 (La.App. 5th Cir.1991).
However, despite the clear wording of the articles and the supreme court's enforcement of their provisions in Succession of Rock, several Louisiana courts have allowed latefiled denials to requests for admissions to constitute requests for withdrawal of those admissions, even if the responses were provided extremely late and were not presented to the court by a motion to withdraw or amend the admissions. See, e.g., O'Regan v. Labat, 379 So.2d 78 (La.App. 4th Cir.), writ denied, 379 So.2d 1099 (La.1980); Hoskins v. Caplis, 431 So.2d 846 (La.App. 2nd Cir.1983); D.H. Holmes Co., Ltd., v. Dronet, 432 So.2d 1135 (La.App. 3rd Cir.1983); Jones v. Gillen, 504 So.2d 575 (La.App. 5th Cir.), writ denied, 508 So.2d 86 (La.1987); Smitherman, Lunn, Chastain and Hill v. Killingsworth, 561 So.2d 816 (La.App. 2nd Cir.1990); Security Nat'l Trust v. Kalmback, 613 So.2d 664 (La. App. 2nd Cir.1993); State, Dept. of Social Services v. McCorkle, 97-13 (La.App. 5th Cir. 4/29/97), 694 So.2d 1077, writ denied, 97-1399 (La. 9/5/97), 700 So.2d 517. In several of these cases, the courts reasoned that the facts should not be deemed admitted because the parties had denied the contested facts in other pleadings or in testimony before the answers were filed. See, e.g., McCorkle, 694 So.2d at 1080 (plaintiff had continually asserted defendant was the father of her child, both before and after the request for admissions); Smitherman, 561 So.2d at 818 (trial began within the fifteen-day response period and the defendant denied those matters in testimony); Jones, 504 So.2d at 577 (request for admissions was denied only eight days late, and before that, the defendants repeatedly denied those allegations); D.H. Holmes, 432 So.2d 1135 (plaintiff's claim denied by defendant's answer to interrogatories and answer to petition).
Nevertheless, the cases from these courts are not always consistent. In Huger v. Sewerage and Water Bd. of New Orleans, 95-2261 (La.App. 4th Cir. 3/27/96), 672 So.2d 1053, 1058, writ denied, 96-1034 (La. 5/31/96), 674 So.2d 264, the court enforced the articles, specifically rejecting the argument that the late response to a request for admissions should be accepted because it addressed the same issues denied or responded to in other pleadings in the case. The articles were also enforced, and failure to respond timely was deemed an admission of facts, in Davis v. Westinghouse Electric Corp., 526 So.2d 337 (La.App. 4th Cir.1988).
Since Succession of Rock, this court has not addressed whether and under which circumstances an untimely answer to a request for admission should be deemed a withdrawal of the admission or a request to withdraw the admission, even when no motion to withdraw or amend the admission is presented to the court.[8] The language of the article *733 is very clear; the matter is admitted unless a written answer or objection is served on the party making the request within the specified time after service of the request. However, Article 1467 is not a trap set for the litigant; it provides many options for the party on whom the request is served. If the party cannot answer within the specified time, the court may allow additional time. The answer itself may take many forms; the party may admit the facts alleged, deny them, state reasons why it cannot truthfully admit or deny the matter, or give reasons why it objects to the request. But if a party fails to take any of these steps, the matter is admitted and, according to Article 1468, is conclusively established. However, the article again provides the party against whom a fact is deemed admitted an opportunity to withdraw or amend it. The party may file a motion asking the court to permit the withdrawal or amendment of an admission. The court may allow the admission to be withdrawn or amended when doing so will enhance the presentation of the merits of the action and when the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice it in maintaining its action or defense on the merits.
With all of these safeguards in the articles, this court can see no reason why the statutory provisions should be judicially obliterated in this case by allowing the plaintiffs' untimely denials to constitute withdrawals of their admissions, particularly when those responses were inexcusably late and the plaintiffs did not even attempt any of the steps available to them to prevent the matters from being deemed admitted. Here, the requests for admissions were filed almost six years after the suit was filed. During that time, the plaintiffs certainly should have developed the information needed to respond to the requests upon which the motions for summary judgment were premised. Indeed, the factual information requested here should have been known to the plaintiffs before suit was even filed. They were asked to admit that 1) no doctor had opined their ipchlordane exposure was sufficient to cause any physical or mental injury, 2) they had no evidence proving exposure to chlordane in sufficient quantities to cause injury, and 3) they had no evidence establishing that any of their physical or mental problems were caused by exposure to chlordane. All the plaintiffs had to do to avoid having these matters deemed admitted was to deny them, if they could truthfully do so. They could also have objected to the requests or, if they needed additional time to provide accurate and complete responses to some or all of them, they could have asked the court for a continuance. Instead, the plaintiffs completely ignored the requests for admissions and allowed over a year to pass without making any response. Even after the motions for summary judgment were filed in July 1995, the plaintiffs could have moved the court for permission to withdraw or amend the conclusively established admissions before the hearing on the motions for summary judgment. They failed to do so.
In reasons for judgment, the trial court indicated there were two grounds for the motions for summary judgment filed by the defendants: 1) plaintiffs failed to respond to requests for admissions filed by Velsicol and this failure resulted in certain facts being deemed admitted, and 2) plaintiffs' experts' reports did not provide material issues of fact which would preclude the granting of the summary judgment. The trial court did not rule on whether the untimely response to requests for admissions resulted in those matters being conclusively established. Rather, the court stated:
After review of the arguments of the parties, the Court does not find that a summary judgment should be granted to the defendants as a result of the plaintiffs' failure to respond to a co-defendant's discovery[,] but [the Court] should instead look at the merits of the case.
We conclude, however, that the matters to which the plaintiffs failed to respond timely *734 were admitted and conclusively established as facts for the purposes of this litigation.[9] As such, the defendants have shown the plaintiffs have no factual support for an essential element of their claim, namely that they can prove they were exposed to chlordane in amounts sufficient to cause their injuries.

CONCLUSION
For the reasons given, we conclude that the trial court erred in granting summary judgment on the basis of documents not properly before it. However, summary judgment was warranted in favor of the defendants, dismissing the plaintiffs' claims, with prejudice, on the basis of the facts that were conclusively established as a result of the plaintiffs' failure to timely respond to certain requests for admissions. For that reason, this court affirms the summary judgment. All costs of this appeal are assessed against the plaintiffs.
AFFIRMED.
NOTES
[1] Judge Ralph E. Tyson of the Nineteenth Judicial District Court is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] James Lutrick Vardaman was not named in the original petition, but was added as a plaintiff in a supplemental and amending petition.
[3] Baker Center moved for summary judgment, which was denied. Its writ application to this court was also denied. See Vardaman v. Baker Center, Inc., 93-0749 (La.App. 1st Cir. 1/13/94), 632 So.2d 1238.
[4] Before the re-scheduled hearing date, Willie's, Interstate, and Baker Center filed cross-claims for contribution and indemnity against Velsicol. Then the plaintiffs moved for voluntary dismissal of all their claims against Velsicol, with prejudice, reserving their rights to proceed against the other defendants. The motion to dismiss Velsicol was heard on the same day as the motions for summary judgment, and was granted. The judgment dismissing Velsicol was appealed by the other defendants and was affirmed by this court. See Vardaman v. Baker Center, Inc., 96-0831 (La. App. 1st Cir. 2/14/97), 689 So.2d 667.
[5] Admittedly, based on the content of Dr. Wernke's affidavit, the trial court may have concluded correctly that the plaintiffs would be unable to establish the causative link between exposure to chlordane and their injuries.
[6] In State v. Foret, 628 So.2d 1116 (La.1993), the Louisiana Supreme Court adopted the federal guidelines for admissibility of an expert's opinions, as explained by the United States Supreme Court in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). These require that experts' opinions be grounded in methods and procedures of science, rather than just subjective belief or unsupported speculation. Accordingly, before expert testimony is admitted, the court should make a preliminary assessment that the reasoning or methodology underlying the testimony is scientifically valid and can be applied to the facts at issue. Because the affidavits submitted by the plaintiffs had no information concerning the scientific methods underlying the experts' opinions, the trial court could not assess the reliability of the opinions expressed. Therefore the affidavits were inadmissible under this standard.
[7] If the request is served on a defendant with the petition, the defendant has thirty days after service to respond.
[8] In an earlier case, Entron, Inc. v. Callais Cablevision, Inc., 307 So.2d 787 (La.App. 1st Cir. 1975), this court relied on prior jurisprudence to affirm a trial court's decision not to enforce the strict provisions of the articles when a party's response to requests for admissions was untimely. There the defendant was asked to admit the accuracy of some 70 invoices in a suit demanding payment of amounts allegedly due under these invoices. The accuracy of these invoices constituted the crux of the litigation and had been contested in the defendant's answer, in depositions, and in answers to interrogatories. This court cited language from Voisin v. Luke, 249 La. 796, 191 So.2d 503 (1966), which indicated that requests for admissions could not be applied to a controverted legal issue going to the heart of the merits of a case. This particular aspect of the Voisin case was later distinguished by the supreme court in Succession of Rock, in which crucial facts were deemed admitted to obtain a default judgment.
[9] Furthermore, based on what the plaintiffs did provide in their late-filed affidavits, it appears they would have had to admit at least the second of these requests, because nothing in those reports or affidavits proves or even suggests any plaintiffs had exposure to chlordane in sufficient quantities to cause injury.