765 So.2d 373 (2000)
William and Patricia FUSSELL
v.
ROADRUNNER TOWING AND RECOVERY, INC., John Deere Insurance, and Brian Stuckey.
No. 99 CA 0194.
Court of Appeal of Louisiana, First Circuit.
March 31, 2000.
Writ Denied June 23, 2000.
*374 Aidan C. Reynolds, Baton Rouge, Counsel for Plaintiffs AppelleesWilliam and Patricia Fussell.
H. Lee Leonard, Lafayette, Counsel for DefendantsAppellantsRoadrunner Towing and Recovery, Inc., John Deere Insurance Company, and Brian Stuckey.
Before: GONZALES, FITZSIMMONS, and WEIMER, JJ.
*375 FITZSIMMONS, J.
Plaintiffs, William and Patricia Fussell, filed suit for damages caused by a rear end collision. A wrecker driven by Mr. Brian Stuckey, while in the course and scope of his employment with Roadrunner Towing and Recovery, Inc., rear-ended a car driven by Mr. Fussell. Defendants, Roadrunner Towing and Recovery, Inc., its insurer, John Deere Insurance, and Brian Stuckey, appealed the judgment in favor of the Fussells. We remand.

FACTS AND PROCEDURAL BACKGROUND
This case was originally scheduled to be tried by a jury.[1] By a motion in limine, the Fussells challenged the defendants' expert, Dr. Gerard Harris. Plaintiffs did not attack specific methods or reasoning in the report submitted by Dr. Harris. Rather, plaintiffs argued that the expert testimony was not relevant.
The trial court cited Arceneaux v. Howard, 633 So.2d 207, 210 (La.App. 1st Cir. 1993), writ denied, 93-3128 (La.2/11/94), 634 So.2d 833, for the proposition that, if the medical and lay testimony is sufficient to prove that the collision caused "some injuries," the minimal force of the impact that caused the injuries is irrelevant. The trial court noted that on different facts, the force of the impact "may be" relevant. Notwithstanding that belief, the court found that Dr. Harris's opinion would not assist the jury and would be confusing. Dr. Harris's testimony was excluded. The defendants proffered Dr. Harris's report.
After a trial on the merits, the trial court held that defendants caused, and were liable for, the injury to Mr. Fussell. Mr. Fussell received $240,000 for general damages and $33,091.22 for medical expenses. Mrs. Fussell was awarded $15,000 for loss of consortium.
Defendants complain of: (1) the trial court's exclusion of defendants' expert, (2) the trial court's finding that the evidence was sufficient for causation, (3) the amount of general damages, the amount for loss of consortium, and (4) the award of $1,828 in medical expenses, which were not related to the accident. Because we find merit in defendants' argument on the exclusion of their expert, we pretermit discussion of the other assignments of error.

EXPERT OPINION
If "scientific ... knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." La. C.E. art. 702; Independent Fire Insurance Company v. Sunbeam Corporation, 99-2181, 99-2257, pp. 12-13 (La.2/29/00), 755 So.2d 226. In the context of scientific knowledge, the "adjective `scientific' implies a grounding in the methods and procedures of science." Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 590, 113 S.Ct. 2786, 2795, 125 L.Ed.2d 469 (1993). The "word `knowledge' connotes more than subjective belief or unsupported speculation." Id.
The admission of evidence is subject to the trial court's discretion. State v. Catanese, 368 So.2d 975, 983 (La.1979). In State v. Foret, 628 So.2d 1116, 1123 (La. 1993), the Louisiana Supreme Court adopted the guidelines for the admissibility of expert opinion enunciated by Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). These guidelines require that the expert opinions be grounded in approved methods and procedures of science, rather than just subjective belief or unsupported speculation. The trial court must ensure that the scientific "evidence admitted is not only relevant, but reliable." Daubert, 509 U.S. at 589, 113 S.Ct at 2795. Before the expert opinion can be admitted, the trial court must make "a preliminary assessment" that "the reasoning or methodology *376 underlying the opinion is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts at issue." Daubert, 509 U.S. at 592-93, 113 S.Ct. at 2796; Vardaman v. Baker Center, Inc., 96-2611, p.6 n.6 (La. App. 1 Cir. 3/13/98), 711 So.2d 727, 731 n. 6. The court must also determine whether the "probative value" of the expert testimony or opinion would be "substantially outweighed by the danger of" confusion or an undue prejudicial effect on the fact finder. La. C.E. art. 403; see Foret, 628 So.2d at 1127; State v. Brooks, 98-1151, p.19 (La.App. 1 Cir. 4/15/99), 734 So.2d 1232, 1242.

RELEVANCY
On the issue of relevancy, the Arceneaux decision is not determinative here. In Arceneaux, the plaintiff received a contusion to the head during a head-on collision at 30-35 mph. Mr. Arceneaux's seatbelt broke and his car was totally destroyed. The medical and lay testimony for causation was rebutted only by speculative opinions. Thus, the material facts were not genuinely in dispute. From those facts, the level of the impact would seem irrelevant.
As the force of impact in a collision lowers, and the seriousness of the injury rises, expert testimony becomes more relevant. An expert's commentary on speed, rate of acceleration, force of impact, and the correlation to injuries suffered as exemplified in reliable published studies would become an integral part of the defense or plaintiff's case. A plaintiff or a defendant cannot be deprived of their right to offer a reasonable presentation of issues by the rigid, artificial application of a jurisprudentially created aid for the proof of causation. Each particular case must be reviewed on its own facts.
In this case, a seemingly minor complaint of pain in the cervical area was followed by a subsequent serious herniated disk that required surgery. The wrecker speed was not a settled question, but depended on a choice of conflicting facts. Mr. Fussell's surgeon, Dr. John Clifford, opined that a low force of impact could cause the type of injury reported by Mr. Fussell. Dr. Clifford based the opinion that the accident caused the herniation on Mr. Fussell's assertion that the car moved forward five feet upon impact with the wrecker. However, if the impact was not of that level, the doctor stated that he would reconsider his opinion. In his deposition, the surgeon stated that the accident, the only trauma reported to him, probably caused the subsequent more serious injury. That was but one expert opinion. The defendants had the right to present a rebuttal. Thus, evidence of the speed, force of impact, and studies correlating level of impact, with possible injuries, would be relevant to the disputed issues here. The testimony sought to be submitted had "a valid scientific connection to the pertinent inquiry ...." Daubert, 509 U.S. at 592, 113 S.Ct. at 2796.
If the trial court had allowed both parties to present their experts before making its factual determinations, the trial court's choice of alternative permissible views would not have been clearly wrong. See Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 883 (La.1993). However, the defendants' expert was not allowed to present an alternative view.

RELIABILITY
To the extent that the trial court reviewed the reliability issue, it was not the reliability of the recognized field of biomechanics or whether a qualified doctorate in that field should be allowed to testify. The only information this court has to review is the proffered report. Thus, the question before us is the reliability of the reasoning and methodology propounded in the report.
Dr. Harris worked for Forensic Technologies International Corporation (FTI). He was asked to determine the speed and *377 acceleration rate of the wrecker; and, whether the injury was consistent with those forces. The report outlined the material reviewed: photographs of the vehicles after the accident; repair estimate for the car; statements by Mr. Fussell, Mr. Stuckey, and Mr. Stuckey's boss; and Mr. Fussell's medical records. The analysis for the speed and rate of acceleration was, as follows:
Based on crash test data for vehicles similar to the Chevrolet and wrecker involved in this accident and using conservation of energy, conservation of momentum, and other engineering principles, FTI has determined that the speed of Mr. Fussell's Chevrolet was no more than 6.9 mph, resulting in an average forward acceleration of no more than 3.2g's for a duration of approximately 100 milliseconds (msec) in this rear-end collision.
To exercise its "gatekeeping" responsibilities, it is the scientific validity of the underlying reasoning and methodology that the trial court must review in its "preliminary assessment." Daubert, 509 U.S. at 589 n. 7 & 592-93, 113 S.Ct. at 2795 n. 7 & 2796. The gatekeeper must also decide "whether that reasoning or methodology properly can be applied to the facts in issue," not whether the expert went to the scene or included specific facts in the conclusions drawn. Daubert, 509 U.S. at 593, 113 S.Ct. at 2796 (emphasis added). The focus of the gatekeeper under Code of Evidence 702 "must be solely on principles and methodology, not on the conclusions that they generate." Daubert, 509 U.S. at 595, 113 S.Ct. at 2797.
The report's conclusions on injury possibilities are based on the initial findings using standard mathematical formulas for calculation of speed, rate of acceleration, and force of impact. Additionally, we note that the injury conclusions were drawn from studies published in scientific and professional journals, which were not challenged. However, the analysis section of the report did not reference the specific facts underlying the reasoning and the conclusions. The analysis did not provide the calculations used. These omissions may have led the trial court to confuse the weight to be given the opinion with the issue of admissibility under Code of Evidence 702. Any alleged failure to visit the scene or supply specific facts in the analysis or conclusion provides a basis for attack by plaintiffs' cross-examination. Under the particular facts here, the failures alleged do not require exclusion under the Daubert and Foret guidelines for reliability.

UNDUE PREJUDICE
Finally, on this record, the defendants' expert's opinion would no more prejudice or confuse the fact finder than the opinions given by Dr. Clifford in the same area. Dr. Clifford's opinion also referenced force vector and injury mechanisms at various speeds, but without citation to the basis for the reasoning or methodology he used.
For these reasons, we find that the trial court erred in excluding the testimony of the defendants' expert as confusing and offering no assistance to the trier of fact. Defendants have the right to rebut proof offered by plaintiffs, even plaintiffs that may assert a Housley presumption. See Housley v. Cerise, 579 So.2d 973 (La.1991).

DE NOVO REVIEW OR REMAND
As we have noted, the defendants chose to proffer only the report. If the testimony of the expert, on direct and on cross, had been taken and proffered, it would not be necessary to remand. However, to decide the case by de novo review based only on the bare bones report would impermissibly deny the parties the right to present their cases fully. The defendants would be denied the opportunity to explain how the reasoning and methods chosen "can be applied to the facts at issue." Daubert, 509 U.S. at 593, 113 S.Ct. at 2796. The plaintiffs would be denied an opportunity to expose weaknesses in the expert's testimony. Without such an exchange and subsequent evaluation by the trial court, we cannot conduct a meaningful or constitutionally valid de novo review. Additionally, *378 the trial court should have the opportunity to make credibility rulings on the new testimony. We realize that after the expert testimony, the parties may feel it necessary to recall witnesses to rebut or confirm statements by the expert. Thus, we believe it is necessary, in this particular case, to vacate the judgment, and remand for a new trial. In lieu of a complete new trial, the parties may agree to have the trial court review the new expert testimony, and any other new testimony deemed necessary by the parties, and then substitute that supplemented record for a complete new trial.

CONCLUSION
We remand for a new trial. The costs of this appeal are assessed to the plaintiffs.
JUDGMENT VACATED, CASE REMANDED.
NOTES
[1] The trial was actually conducted as a bench trial.