968 So.2d 179 (2007)
Ernest HALL, Jr., Odean Hall Wilson, Rose Hall Griffin, and Daisy Faye Hall Malbury
v.
OUR LADY OF THE LAKE R.M.C.
No. 2006 CA 1425.
Court of Appeal of Louisiana, First Circuit.
June 20, 2007.
*180 William T. Lowrey, Jr., Baton Rouge, LA, for Plaintiff-Appellant, Ernest Hall, Jr., et al.
Douglas K. Williams, Lervette J. Blair, Baton Rouge, LA, for Defendant-Appellee, Our Lady of the Lake Hospital.
Before PETTIGREW, DOWNING, and HUGHES, JJ.
PETTIGREW, J.
In this medical malpractice action, plaintiffs' mother was hospitalized after sustaining a right hip fracture. After undergoing surgery to repair her hip, plaintiffs' mother was later found to be unresponsive and in respiratory distress, necessitating emergency resuscitation. As a result, plaintiffs' mother suffered a decreased mental status, requiring further hospitalization, physical therapy, skilled nursing care, and home attendants. Plaintiffs' mother ultimately died several months following her release from the hospital.
Plaintiffs thereafter filed a complaint against the hospital seeking to have a Medical Review Panel determine whether their mother's respiratory distress, emergency resuscitation, and further hospitalization was the result of overmedication. Following a conclusion by the Medical Review Panel that the hospital did not breach the requisite standard of care, plaintiffs filed the instant suit. The hospital was later dismissed via summary judgment, and this appeal followed. We hereby reverse.

FACTS
On or about September 11, 2001, Marie Hall, age 79, was admitted to Our Lady of the Lake Regional Medical Center ("OLOL") in Baton Rouge to undergo surgery, for the repair of a right hip fracture *181 that Ms. Hall had sustained as a result of a fall in her home. Ms. Hall related a history of emphysema, chronic obstructive pulmonary disease (COPD), bronchitis, and hypertension. After undergoing a right total hip arthroplasty performed by Dr. Brent Bankston on September 12, 2001, Ms. Hall was transferred postoperatively to the orthopaedic unit for further monitoring and assessment. In the orthopaedic unit, Ms. Hail was monitored by nurse Dawn Lessard, who performed a complete assessment on Ms. Hall and noted that her vital signs were within normal limits. Later Ms. Hall complained of severe postoperative pain, and hospital records reflect that nurse Lessard administered 25 mg. of Demerol pursuant to Dr. Bankston's post-op orders at approximately 3:15 P.M. Due to Ms. Hall's persistent complaints of pain, nurse Lessard administered 5 mg. of Lortab at 5:30 P.M., but Ms. Hall's vital and neurological signs remained within normal limits. Due to Ms. Hall's continued complaints of unrelenting pain, nurse Lessard contacted Dr. Bankston's assistant at 6:30 P.M. and advised that despite the administration of both Demerol and Lortab, Ms. Hall was not obtaining any relief. The physician who was taking Dr. Bankston's calls that evening called back and directed nurse Lessard to utilize Dr. Bankston's routine morphine orders: 5-15 mg. every 2-3 hours as needed for severe pain. As Ms. Hall continued to complain of severe pain, nurse Lessard administered an injection of 15 mg. of morphine to Ms. Hall.
Ms. Hall's condition was monitored by the OLOL nursing staff throughout the evening, and periodic assessments revealed that Ms. Hall was drowsy, but easily aroused, and resting quietly. Ms. Hall's vital and neurological signs remained within normal limits. At approximately 10:15 P.M., Ms. Hall was found unresponsive, and a code was called. Ms. Hall was thereafter resuscitated and later transferred to MICU. On September 15, 2001, Ms. Hall was transferred back to the orthopaedic floor where she continued to improve. Ms. Hall was discharged from OLOL on October 24, 2001.
Ms. Hall was readmitted to OLOL on October 27, 2001, with exacerbation of chronic obstructive pulmonary disease (COPD) and congestive heart failure. She was discharged and returned to her home on November 9, 2001. Ms. Hall later died on December 12, 2001, due to complications from atherosclerotic cardiovascular disease.
As a result of the foregoing, Ms. Hall's children, Ernest Hall, Jr., Odean Hall Wilson, Rose Hall Griffin, and Daisy Faye Hall Malbury (collectively referred to herein as "plaintiffs"), filed a complaint against OLOL with the Patient's Compensation Fund seeking a determination by a Medical Review Panel as to whether their mother's respiratory arrest was the result of medical malpractice. The Medical Review Panel convened and rendered an opinion on November 9, 2004, wherein it concluded that "the evidence does not support the conclusion that [OLOL] failed to meet the applicable standard of care as charged in the complaint." The Medical Review Panel specifically found that:
It was reasonable for the nursing staff to address and attempt to alleviate the patient's pain which was certainly extreme following hip surgery. After the patient received pain medications, both the patient and the family members were, shortly thereafter, requesting more medications for pain. The nurse contacted the on-call physician for Dr. Bankston and received an order to use Dr. Bankston's routine morphine orders, 5-15 mg. IM every 2-3 hours. It should be noted that the nurse was reasonably experienced with post-op *182 surgical patients. Although she precisely followed the morphine order, she theoretically deviated from the physician order in giving a single dose of Lortab earlier that [sic] the parameters of the order. However this was all done to address the concerns of the patient and the family. The panel feels that the Lortab played a very minor role in the management of this complicated case.

ACTION OF THE TRIAL COURT
Following the rendition of the report by the Medical Review Panel, the plaintiffs filed the instant suit against OLOL in the 19th Judicial District Court on February 4, 2005. In their Petition for Damages, plaintiffs alleged that OLOL, through its nursing staff, failed to properly administer narcotic pain medication to Ms. Hall given her status, prior history, and condition.
OLOL responded to the plaintiffs' petition on March 30, 2005, by filing an answer in the form of a general denial. On April 5, 2005, OLOL forwarded to plaintiffs certain Interrogatories and Requests for Admission pertaining to the identification of experts. Specifically, OLOL requested that plaintiffs admit or deny whether they had knowledge of any expert witness(es) who may have formulated an opinion as to whether OLOL or members of its staff breached any standard of care that may have been owed to Ms. Hall, or whether actions on the part of OLOL or members of its staff caused, or contributed to, Ms. Hall's subsequent death. Plaintiffs failed to respond to the Requests for Admission forwarded by OLOL within the 15-day period established by La.Code Civ. P. art. 1467, and said requests were deemed to have been admitted.
On December 29, 2005, OLOL moved for summary judgment on the basis that plaintiffs had not offered any expert opinion testimony to establish the standard of care applicable to OLOL, that OLOL had breached the standard of care that it owed to Ms. Hall, or that evidence to establish that any action or inaction on the part of OLOL had caused or contributed to any injury to Ms. Hall that she would not have otherwise suffered. In support of its motion for summary judgment, OLOL offered: (1) the Petition for Damages filed by plaintiffs, (2) medical records of Ms. Hall from OLOL, (3) a copy of Ms. Hall's death certificate, (4) the affidavit of Dr. Todd Cooley[1], and (5) a copy of the Interrogatories and Requests for Admission previously propounded to plaintiffs by OLOL.
On January 4, 2006, plaintiffs responded to the Interrogatories and Requests for Admissions previously forwarded to them by OLOL. Plaintiffs acknowledged that they had spoken with two experts regarding this matter, and planned to introduce at trial the testimony of a registered nurse whom they identified as Patti G. Granzin. Plaintiffs further clarified that the instant suit is not an action seeking damages for the wrongful death of Ms. Hall, but rather a survival action for damages that Ms. Hall and plaintiffs sustained during the period September 12, 2001 to the time of Ms. Hall's death on December 12, 2001.
OLOL's Motion for Summary Judgment was originally scheduled to be heard on February 27, 2006, but was continued at plaintiffs' request until March 20, 2006. On March 8, 2006, plaintiffs filed a Motion to Withdraw Matters Deemed Admitted, a Memorandum in Support of Motion to *183 Withdraw Matter Deemed Admitted, together with a supporting memorandum and a copy of plaintiffs' answers to OLOL interrogatories and request for admissions.
Both OLOL's Motion for Summary Judgment and plaintiffs' Motion to Withdraw Matters Deemed Admitted were heard by the trial court on May 8, 2006. Upon consideration of the law, the evidence and the arguments of counsel, the trial court denied plaintiffs' Motion to Withdraw Matters Deemed Admitted, and granted OLOL's Motion for Summary Judgment, thereby dismissing plaintiffs' claims against OLOL with prejudice and at their cost. It is from the denial by the trial court of their Motion to Withdraw Matters Deemed Admitted and its granting of OLOL's Motion for Summary Judgment that plaintiffs have appealed.

ASSIGNMENT OF ERRORS
In connection with their appeal in this matter, plaintiffs have put forth the following assignments of error for review and consideration by this court:
1. The trial court committed legal error by denying the plaintiffs' Motion to Withdraw Matters Deemed Admitted because judgment, as a matter of law, was not warranted; and
2. The trial court committed legal error by granting the defendant's Motion for Summary Judgment because judgment, as a matter of law, was not warranted.

ANALYSIS
Requests for Admissions
In their initial assignment of error, the plaintiffs assert that the trial court committed legal error when it denied their Motion to Withdraw Matters Deemed Admitted. This court has previously recognized that a party may serve upon any other party a written request for the admission of the truth of any relevant matters of fact. La.Code Civ. P. art. 1466. Generally, the matter is deemed admitted if the party to whom the request is directed does not respond within 15 days after service of the request. La.Code Civ. P. art. 1467. Any matter deemed admitted pursuant to La.Code Civ. P. art. 1467 is conclusively established unless the court, on motion, permits withdrawal or amendment of the admission. La.Code Civ. P. art. 1468. The court may permit withdrawal of an admission when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal of the admission will prejudice him in maintaining his action or defense on the merits. La.Code Civ. P. art. 1468. See Prestage v. Clark, 97-0524, p. 7 (La.App. 1 Cir. 12/28/98), 723 So.2d 1086, 1090, writ denied, 99-0234 (La.3/26/99), 739 So.2d 800.
As this court noted in Prestage, the courts have generally given full effect to articles 1467 and 1468 when there has been a total lack of response to requests for admissions. Vardaman v. Baker Center, Inc., 96-2611, p. 7 (La.App. 1 Cir. 3/13/98), 711 So.2d 727, 732. However, several Louisiana courts have allowed late-filed denials to requests for admissions to constitute requests for withdrawal of those admissions, even if the responses were provided extremely late and were not presented to the court by a motion to withdraw or amend the admissions. Vardaman, 96-2611 at 8, 711 So.2d at 732.
The language of article 1467 is very clear; the matter is admitted unless a written answer or objection is served on the party making the request within the specified time after service of the request. Vardaman, 96-2611 at 9, 711 So.2d at 732-33. However, article 1467 is not a trap set *184 for the litigant; it provides many options for the party on whom the request is served. For example, if the party cannot answer within the specified time, the court may allow additional time. See La.Code Civ. P. art. 1467; Vardaman, 96-2611 at 9, 711 So.2d at 733.
In the instant case, although the plaintiffs failed to respond to OLOL's Requests for Admission within the fifteen (15) day period set forth in La. Civ. P. art. 1467, plaintiffs provided responses on January 4, 2006, six (6) days after OLOL moved for summary judgment. On March 6, 2006, two months prior to the May 8, 2006 hearing on OLOL's Motion for Summary Judgment, plaintiffs moved the court for permission to withdraw the matters deemed to have been admitted. Plaintiffs asserted that inasmuch as the answers to discovery were delivered to OLOL four (4) months prior to the hearing on summary judgment, OLOL was not surprised or prejudiced in its preparation for the summary judgment hearing.
We agree. A review of plaintiffs' responses to the Requests for Admission and Interrogatories propounded by OLOL discloses that plaintiffs denied one request for admission while admitting the remaining four. Plaintiffs also responded to all sixteen interrogatories. Plaintiffs denied a request for admission that asked them to admit that they knew of no expert witness who had offered an opinion that OLOL, or its staff, breached any standard of care owed to the deceased Ms. Hall. In response to a related interrogatory, plaintiffs disclosed that at the trial of this matter, they intended to offer the testimony of Ms. Patti Granzin, a registered nurse who is also a certified nurse practitioner. Plaintiffs also attached thereto Ms. Granzin's affidavit and curriculum vitae, as well as Ms. Granzin's expert opinion and conclusions.
At the May 8, 2006 hearings on plaintiffs' Motion to Withdraw Matters Deemed Admitted and OLOL's Motion for Summary Judgment, the trial court denied plaintiffs' motion, which would appear to preclude the presentation of expert testimony by the plaintiffs. Later, during the hearing on OLOL's Motion for Summary Judgment, the trial court, in an apparent reversal of its earlier holding, admitted, without objection, Ms. Granzin's affidavit and curriculum vitae, as well as Ms. Granzin's expert opinion and conclusions.
Inasmuch as the identity and conclusions of plaintiffs' expert, Ms. Granzin, were disclosed to OLOL four (4) months prior to the hearing on summary judgment, and further that Ms. Granzin's affidavit, curriculum vitae, opinion and conclusions were later admitted by the trial court without objection, we conclude that plaintiffs' Motion to Withdraw Matters Deemed Admitted should have been granted, and that the trial court's denial of said motion constituted error and is reversed.
Summary Judgment
In their second and final assignment of error, the plaintiffs assert that the trial court committed legal error by granting OLOL's Motion for Summary Judgment on the issue that OLOL did not breach the standard of care that it owed to Ms. Hall.
A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine issue of material fact. Johnson v. Evan Hall Sugar Co-op., Inc., 2001-2956, p. 3 (La.App. 1 Cir. 12/30/02), 836 So.2d 484, 486. Summary judgment is properly granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that mover is entitled to judgment as a matter of law. La.Code Civ. P. art. 966(B). Summary judgment is favored and is designed *185 to secure the just, speedy, and inexpensive determination of every action. La.Code Civ. P. art. 966(A)(2); Thomas v. Fina Oil and Chemical Co., XXXX-XXXX, pp. 4-5 (La.App. 1 Cir. 2/14/03), 845 So.2d 498, 501-502.
On a motion for summary judgment, the burden of proof is on the mover. If, however, the mover will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the mover's burden on the motion does not require that all essential elements of the adverse party's claim, action, or defense be negated. Instead, the mover must point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, the adverse party must produce factual evidence sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. If the adverse party fails to meet this burden, there is no genuine issue of material fact, and the mover is entitled to summary judgment. La.Code Civ. P. art. 966(C)(2); Robles v. Exxonmobile, XXXX-XXXX, p. 4 (La.App. 1 Cir. 3/28/03), 844 So.2d 339, 341.
Summary judgments are reviewed on appeal de novo. An appellate court thus asks the same questions as does the trial court in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law. Ernest v. Petroleum Service Corp., 2002-2482, p. 3 (La.App. 1 Cir. 11/19/03), 868 So.2d 96, 97, writ denied, XXXX-XXXX (La.2/20/04), 866 So.2d 830. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to this case. Walker v. Phi Beta Sigma Fraternity (RHO Chapter), 96-2345, p. 6 (La.App. 1 Cir. 12/29/97), 706 So.2d 525, 528.
In a medical malpractice action against a hospital, the plaintiff must prove that the hospital owed the plaintiff a duty to protect against the risk involved, that the hospital breached that duty, that the plaintiff suffered an injury, and that the hospital's actions were a substantial cause in fact of the injury. Smith v. State through Department of Health and Human Resources Administration, 523 So.2d 815, 819 (La.1988). A hospital is bound to exercise the requisite amount of care toward a patient that the particular patient's condition may require. Hunt v. Bogalusa Community Medical Center, 303 So.2d 745, 747 (La.1974). It is the hospital's duty to protect a patient from dangers that may result from the patient's physical and mental incapacities as well as from external circumstances peculiarly within the hospital's control. Hunt, 303 So.2d at 747. A determination of whether a hospital has breached the duty of care it owes to a particular patient depends upon the circumstances and facts of that case. Hunt, 303 So.2d at 747.
Upon our review of this matter, we note that OLOL, in support of its Motion for Summary Judgment, introduced the findings of the Medical Review Panel. In its report, the panel noted that:
Although [the nurse] precisely followed the morphine order, she theoretically deviated from the physician order in giving a single dose of Lortab earlier that [sic] the parameters of the order. . . . The panel feels that the Lortab played a very minor role in the management of this complicated case.
Nevertheless, the panel reached the conclusion that "[t]he evidence does not support the conclusion that the defendant *186 [OLOL] failed to meet the applicable standard of care as charged in the complaint."
In our review of this matter, we further note that in support of its Motion for Summary Judgment, OLOL also introduced certified copies of Ms. Hall's medical records from OLOL. Contained within these medical records is a September 13, 2001 notation by a Dr. McGrath, indicating that Ms. Hall's respiratory arrest was likely secondary to the administration of narcotics on top of the underlying chronic obstructive pulmonary disease (COPD). This statement, without further explanation, would seem to imply that the administration of narcotic pain medication was a contributing cause of Ms. Hall's respiratory arrest. While subsequent investigation may reveal this to be an incorrect interpretation of Dr. McGrath's statement, it is, absent further clarification, a plausible interpretation. Unfortunately, neither the plaintiffs nor OLOL elected to depose Dr. McGrath for the purpose of obtaining clarification of this statement.
In opposition to OLOL's motion for summary judgment, the trial court, in a seeming reversal of its earlier ruling, allowed plaintiffs to introduce into evidence, without opposition, the affidavit and curriculum vitae of their expert witness, Ms. Patti Granzin, a registered nurse and certified nurse practitioner, together with Ms. Granzin's expert opinion and conclusions. Ms. Granzin opined that based upon her training, experience, and review of Ms. Hall's hospital records, it was obvious that considering Ms. Hall's age and history of cardiovascular and lung disease, Ms. Hall was a compromised patient. It was Ms. Granzin's opinion that the medical record's lack of documentation (with respect to Ms. Hall's vital signs) for several hours following the administration of the maximum dosage of morphine sulfate would indicate a deviation from the requisite standard of care.
Following a thorough review of the record in this matter, it is the opinion of this court that genuine issues of material fact remain with respect to the care received by Ms. Hall at OLOL; and for this reason, summary judgment was not appropriate.

CONCLUSION
For the above and foregoing reasons, the denial by the trial court of plaintiffs' Motion to Withdraw Matters Deemed Admitted is reversed, and the motion is hereby granted. In addition, the trial court's grant of summary judgment in favor of defendant, Our Lady of the Lake Regional Medical Center, is reversed and hereby denied. This matter is remanded to the trial court for further proceedings consistent with this opinion. All costs associated with this appeal shall be assessed against defendant, Our Lady of the Lake Regional Medical Center.
REVERSED AND REMANDED.
HUGHES, J., concurs with reasons.
HUGHES, J., concurs with reasons.
HUGHES, J., concurring.
I respectfully concur. Requests for Admissions are not the proper vehicle to discover experts.
NOTES
[1] Dr. Cooley, an internist, was a member of the Medical Review Panel that examined this matter. In his affidavit, Dr. Cooley opined that OLOL met the requisite standard of care owed to Ms. Hall and that no action or inaction on the part of OLOL had caused, or contributed to, the death of Ms. Hall.