| | | |
|---|---|---|
| **RANDY PILET** | * | **NO. 2020-CA-0319** |
| **VERSUS** | * | |
| | | **COURT OF APPEAL** |
| **PILET DISTRIBUTORS, THE** | * | |
| **ESTATE OF STEVE PILET,** | | **FOURTH CIRCUIT** |
| **BIG BOY DISTRIBUTOR,** | * | |
| **L.L.C., ALLSTATE** | | **STATE OF LOUISIANA** |
| **INSURANCE COMPANY,** | * * * * * * * | |
| **MILTON MORMAN, XYZ** | | |
| **INSURANCE COMPANY** | | |

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2015-04938, DIVISION "B-1"
Honorable Rachael Johnson
* * * * * *
**Judge Regina Bartholomew-Woods**
* * * * * *
(Court composed of Judge Terri F. Love, Judge Joy Cossich Lobrano,
Judge Regina Bartholomew-Woods)

John J. Finckbeiner, Jr.
Ryan P. Early
LAW OFFICE OF JOHN FINCKBEINER, JR.
2203 Pakenham Drive
Chalmette, LA 70043

     COUNSEL FOR PLAINTIFF/APPELLANT

Christopher P. Lawler
DONOVAN & LAWLER
4640 Rye Street
Metairie, LA 70006

     COUNSEL FOR DEFENDANT/APPELLEE

       **REVERSED AND REMANDED**
       **DECEMBER 30, 2020**

*RBW*

*TFL*

*JCL*

This civil appeal arises from an accident that occurred when Appellant-Plaintiff fell from a company-owned vehicle while conducting business on behalf of the company. The company-owned vehicle was insured through a business automotive policy, which excluded coverage for worker's compensation and employee indemnification and employer's liability. The trial court determined that the injured Appellant-Plaintiff was an employee of the insured's business and for that sole reason, the trial court granted summary judgment in favor of the insurance company on the issue of insurance coverage and dismissed, with prejudice, the insurance company from the lawsuit. Appellant-Plaintiff appealed, asserting that a genuine issue of material fact existed as to whether he was an independent contractor, rather than an employee of the underlying company. For the reasons

that follow, we reverse the trial court's judgment and remand this matter for further proceedings.

## FACTUAL BACKGROUND

For twenty (20) years, Steve Pilet owned and operated Pilet Distributors, a wholesale dairy goods delivery company.[1] When Steve Pilet was diagnosed with cancer,[2] he sought the assistance of his brother, Plaintiff-Appellant, Randy Pilet ("Mr. Pilet"),[3] with the day-to-day operations of his business, specifically making deliveries via driving a delivery truck,[4] while Steve Pilet underwent chemotherapy treatment. On May 23, 2014, at approximately 7:30 a.m., Mr. Pilet, accompanied and assisted by Milton Mormon ("Mr. Mormon"),[5] delivered a shipment of goods to Chef Discount Market located at 10833 Chef Menteur Highway in New Orleans, Louisiana. Mr. Pilet drove a straight truck outfitted with a refrigerated cargo area and a lift gate at the rear, which lowers freight or goods from the cargo area to the ground; the lift gate was operated by a switch located on the outside of the truck. The truck[6] was owned by Pilet Distributors and was insured through a business

---

[1] There were two (2) full-time employees of Pilet Distributors: Milton Mormon and Shane Raimer. Mr. Mormon primarily loaded and unloaded the goods on and off the delivery truck. Mr. Raimer primarily drove the delivery truck. At some point after the accident, Mr. Raimer purchased Pilet Distributors.

[2] Steve Pilet died on June 1, 2014.

[3] When deposed, Mr. Pilet testified that Steve Pilet also sought the assistance of their other brother, Theodore "Teddy" Pilet.

[4] Mr. Pilet held a commercial driver's license (CDL) and had previously driven a dairy delivery truck for Brown's Dairy from 2000 to 2005.

[5] When deposed, Mr. Pilet explained that Mr. Mormon accompanied him on all of his deliveries.

[6] According to Mr. Pilet, at the time of the accident, Shane Pilet and/or Pilet Distributors owned two (2) trucks.

automotive policy[7] issued by Defendant-Appellee, Allstate Insurance Company ("Allstate"). During the delivery, while the lift gate was securely aligned with the rear of the truck, Mr. Pilet unloaded a shipment of juice onto the lift gate and then returned to the refrigerated cargo area to retrieve a stack of six (6) cases of 1-gallon, two-percent milk[8] located toward the front of the refrigerated cargo section.[9] While Mr. Pilet was inside the refrigerated cargo area, Mr. Mormon lowered the lift gate to the ground without Mr. Pilet's knowledge;[10] Mr. Pilet asserted that no one other than the person who is on the truck loading the cargo should operate the lift gate. According to Mr. Pilet, because the floor of the refrigerated cargo area was rusty, he had to create momentum to move the crates and could not stop to look behind him[11] through the curtains, which were brown and moldy,[12] before stepping backward onto the lift gate. Consequently, Mr. Pilet fell backward "suddenly and without warning" from the truck onto the pavement under the weight of the cases of milk sustaining several bodily injuries.[13]

---

[7] The policy was effective October 1, 2013 through October 1, 2014, and excluded, in pertinent part, worker's compensation and employee indemnification, as well as employer's liability.

[8] Mr. Pilet explained that each case of milk weighed approximately thirty-two (32) pounds and the six cases, altogether, weighed approximately two hundred (200) pounds.

[9] When deposed, Mr. Pilet testified that he observed Mr. Mormon standing outside the truck (on the side with the lift gate operation) smoking a cigarette.

[10] When deposed, Mr. Pilet explained that lift gates typically make a buzzing noise (produced by the motor) when being raised, but not when being lowered. Mr. Pilet also testified that Mr. Mormon had never lowered the lift gate before and had brought cargo into a store while Mr. Pilet was working in the refrigerated cargo section of the truck.

[11] Mr. Pilet was walking backwards.

[12] When deposed, Mr. Pilet explained that it was "impossible" to clean the curtains.

[13] Mr. Pilet reported to St. Bernard Parish Hospital on the day of the accident. According to Mr. Pilet, his "head was split open" and he suffered a "split muscle" and a contusion to his left arm. He also suffered injuries to his right knee, left ankle (a sprain), and back (a bulging disk and

## PROCEDURAL HISTORY

On May 22, 2015, Mr. Pilet filed a petition for damages against Pilet Distributors, the Estate of Steve Pilet, Big Boy Distributor, L.L.C.,[14] Allstate, Mr. Mormon, and XYZ Insurance Company, and alleged negligence against Mr. Mormon and vicarious liability against Pilet Distributors and Steve Pilet. Further, Mr. Pilet sought compensation for his personal injuries, associated medical costs, and pain and suffering.[15] On February 16, 2016, Allstate answered the petition for damages, denied the allegations, and asserted that the insurance policy does not cover Mr. Pilet's claims.

On October 25, 2019, Allstate filed a motion for summary judgment. Allstate asserted that the business automotive policy of insurance issued to Pilet Distributors and Steve Pilet excluded coverage for injuries sustained by an employee acting in the course and scope of employment with the insured's business. Further, Allstate argued that because Mr. Pilet was an employee of the insured's business, Allstate should be dismissed from the lawsuit. In response, Mr. Pilet argued that he was an independent contractor rather than an employee of Pilet Distributors and Steve Pilet.

On January 31, 2020, the trial court held a hearing on Allstate's motion for summary judgment. On February 26, 2020, the trial court issued a written

---

fractured coccyx/tailbone). The injury to his head required stitches and/or staples. As a result of these injuries, Mr. Pilet avers that he still has a lump on his head, a dent and numbness in his arm, his knee "pops," and his ankle swells.

[14] Mr. Raimer owns Big Boy Distributor. L.L.C., a company that delivers dairy products.

[15] When deposed, Mr. Pilet testified that he did not make a claim for worker's compensation and that Steve Pilet and/or Pilet Distributors did not have workers compensation insurance.

judgment granting the motion for summary judgment in favor of Allstate on the issue of insurance coverage and dismissed Allstate, with prejudice, from the lawsuit. It is from this judgment that Mr. Pilet now appeals

## DISCUSSION

### *Assignment of Error*

On appeal, Mr. Pilet raises a sole assignment of error:

Whether the trial court erred in granting summary judgment in favor of Allstate on the issue of insurance coverage and dismissing, with prejudice, Allstate from the lawsuit.

### *Standard of Review*

In the instant appeal, Mr. Pilet argues that the trial court erred in granting summary judgment in favor of Allstate because a genuine issue of material fact existed to make summary judgment inappropriate, to wit: whether Mr. Pilet was an employee or independent contractor of Pilet Distributors.

This Court, in *Alexander v. Hancock Bank*, addressed the standard of review on motions for summary judgment as follows

> An appellate court conducts a *de novo* review, applying the same criteria that govern the trial court's determination of whether summary judgment is appropriate. *Brown v. Amar Oil Co.*, 2011-1631, p. 2 (La. App. 1 Cir. 11/8/12), 110 So.3d 1089, 1090 (citing *Sanders v. Ashland Oil, Inc.*, [19]96-1751, p. 6 (La. App. 1 Cir. 6/20/97), 696 So.2d 1031, 1035). A motion for summary judgment should only be granted if the pleadings, depositions, answers to interrogatories, and admissions, together with any affidavits show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. *Collins v. Randall*, 2002-0209, p. 3 (La. App. 1 Cir. 12/20/02), 836

5

So.2d 352, 354. The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of actions. *King v. Allen Court Apartments II*, 2015–0858, p. 3 (La. App. 1 Cir. 12/23/15), 185 So.3d 835, 837, *writ denied*, 2016-0148 (La. 3/14/16), 189 So.3d 1069. This procedure is favored and shall be construed to accomplish these ends. *Id.*; *see also* La. C.C.P. Art. 966 A(2).

The initial burden of proof rests on the moving party. La. C.C.P. Art. 966 D(1). However, if the mover will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather, to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action or defense. *King*, 2015-0858 at p. 3, 185 So.3d at 838. Thereafter, if the adverse party fails to provide factual evidence sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. *Id.* It is only after the motion has been made and properly supported that the burden shifts to the non-moving party. *Brown*, 2011-1631 at p. 3, 110 So.3d at 1090-91; *Pugh v. St. Tammany Parish School Bd.*, 2007-1856, p. 3 (La. App. 1 Cir. 8/21/08), 994 So.2d 95, 98.

A genuine issue is a triable issue. *Brown*, 2011-1631, p. 3, 110 So.3d at 1090-91. *Jones v. Stewart*, 2016-0329, p. 7 (La. App. 4 Cir. 10/5/16), 203 So.3d 384, 389, *writs denied*, 2016-1962, 2016-1967 (La. 12/16/16) —— So.3d. ——, ——, 211 So.3d. 1169, 2016 WL 7638451, 2016 WL 7638388. More precisely, an issue is genuine if reasonable persons could disagree. *Id.* If on the state of the evidence, reasonable persons could reach only one conclusion, there is no need for a trial on that issue. *Id.* A fact is material when its existence or non-existence may be essential to the plaintiff's cause of action under the applicable theory of recovery. *Id.* Facts are material if they potentially insure or preclude recovery, affect a litigant's ultimate success, or determine the outcome of the legal dispute. *Id.*; *King v. Illinois Nat. Ins. Co.*, [20]08-149, p. 6 (La. 4/3/09), 9 So.3d 780, 784. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of substantive law applicable to the case. *Brown*, 2011-1631

6

> at p. 3,110 So. 3d at 1091; *Hall v. Our Lady of the Lake R.M.C.*, 2006-1425, p. 9 (La. App. 1 Cir. 6/20/07), 968 So.2d 179, 185.
>
> In order to determine whether the trial court's grant of summary judgment was proper, this court must look to the applicable substantive law.

2016-0662, pp. 2-4 (La. App. 4 Cir. 2/8/17), 212 So.3d 713, 715-16.

Since Allstate seeks to avoid covering Mr. Pilet for the injuries he sustained under its insurance contract's exclusion provisions, via summary judgment, it bears the burden of proof. *See Smith v. Moreau,* 2017-0003, p. 4 (La. App. 1 Cir. 06/02/17), 222 So.3d 76, 765 (citing *Lewis v. Jabbar,* [20]08-1051 (La. App. 1 Cir. 1/12/09), 5 So.3d 250, 254 ("An insurer seeking to avoid coverage through summary judgment bears the burden of proving some exclusion applies to preclude coverage").

"[S]ummary judgment may be rendered on the issue of insurance coverage alone, although a genuine issue as to liability or the amount of damages exists." *Stewart Interior Contractors, L.L.C. v. Metalpro Indus., L.L.C.*, 2007-0251, pp. 5-6 (La. App. 4 Cir. 10/10/07), 969 So.2d 653, 658; *See* La. C.C.P. art. 966 E; *Leflore v. Coburn,* 1995-0690 (La. App. 4 Cir. 12/28/95), 665 So.2d 1323. Additionally, "summary judgment declaring a lack of coverage under an insurance policy may not be rendered unless no reasonable interpretation of the policy, when applied to the undisputed facts shown by the evidence supporting the motion, affords coverage." *Calvin v. Janbar Enterprises, Inc.*, 2003-0382, p. 3 (La. App. 4 Cir. 9/24/03), 856 So.2d 88; *Westerfield v. LaFleur,* 493 So.2d 600 (La.1986).

Our review is limited to whether summary judgment was appropriately granted by the trial court based on two exclusions set forth in Allstate's motion, i.e., (1) employee indemnification and employer's liability and (2) worker's compensation.

***Business Auto Policy***

Allstate issued a commercial auto (business or truckers) coverage policy to Steve Pilet, with an effective period from October 1, 2013 to October 1, 2014.[16] The policy defined the "insured" as anyone using a "covered auto" with the insured's permission and "employee" included a leased worker, but not a temporary worker.[17] The policy excluded, in pertinent part, coverage for worker's compensation and employee indemnification and employer's liability, providing as follows:

> *3. Worker's Compensation*
>
> *Any obligation for which the "insured'" or the "insured's" insurer may be held liable under any worker's compensation, disability benefits or unemployment compensation law or any similar law.*
>
> *4. Employee Indemnification and Employer's Liability*
>
> *"Bodily Injury" to:*
> *a. An "employee" of the "insured" arising out of and in the course of:*
> *1) Employment by the "insured"; or*
> *2) Performing the duties related to the conduct of the "insured's" business; or*
>
> *b. The spouse, child, parent, brother, or sister of that "employee" as a consequence of Paragraph a. above.*

---

[16] The amount of the policy premium was $17,128.00. The policy included liability coverage with a $500,000 limit and coverage for comprehensive, specified causes of loss, and collision.

[17] Allstate's Insurance Policy, Section V-Definitions, Subsections (H) & (F), respectively.

*This exclusion applies:*
*1) Whether the "insured" may be liable as an employer or in any other capacity; and*
*2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.*

*But this exclusion does not apply to "bodily injury" to domestic "employees" not entitled to worker's compensation benefits or to liability assumed by the "insured" under an "insured contract." For purposes of the coverage form, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.*

### *Employment Relationship*

The coverage of the business auto insurance policy depends on whether Mr. Pilet was an employee of Pilet Distributors. This Court, in *Tate v. Progressive Sec. Ins. Co.,* explained that "the distinction between employee and independent contractor status is a factual determination to be decided on a case-by-case basis." 2008-0950, p. 2 (La. App. 4 Cir. 1/28/09), 4 So.3d 915, 916.[18] The Louisiana Supreme Court explained that "[i]t is well understood by the courts of this State that the term independent contractor connotes a freedom of action and choice with respect to the undertaking in question and a legal responsibility on the part of the contractor in case the agreement is not fulfilled in accordance with its covenants." *Hickman v. S. Pac. Transp. Co.*, 262 So.2d 385, 390 (La. 1972). This Court, in *Chaisson v. Louisiana Rock Monsters, LLC*, explained that

> The Louisiana Supreme Court has developed the following factors to help determine whether an individual is an employee or an independent contractor:

---

[18] This Court, in *Tate v. Progressive Sec. Ins. Co.*, emphasized that "there is no hard and fast rule" to determining whether an individual is an independent contractor or employee. 2008-0950, p. 9 (La. App. 4 Cir. 1/28/09), 4 So.3d 915, 920.

(1) there is a valid contract between the parties; (2) the work being done is of an independent nature such that the contractor may employ non-exclusive means in accomplishing it; (3) the contract calls for specific piecework as a unit to be done according to the independent contractor's own methods, without being subject to the control and direction of the principal, except as to the result of the services to be rendered; (4) there is a specific price for the overall undertaking agreed upon; and (5) the duration of the work is for a specific time and not subject to termination or discontinuance at the will of either side without a corresponding liability for its breach. *Hickman v. Southern Pacific Transport Co.,* 262 La. 102, 262 So.2d 385 (1972).

The "essence of the employer-employee relationship is the right to control." *Hillman v. Comm-Care, Inc.,* [20]01-1140, p. 8 (La.01/15/02), 805 So.2d 1157, 1162. The primary factors evidencing the right to control are "1) selection and engagement, 2) payment of wages, 3) power of dismissal and 4) power of control." *Id.* None of the factors alone is determinative. Rather, the court must consider the totality of the circumstances. *See Harrington v. Hebert,* [20]00-1548 (La. App 3 Cir. 5/23/01), 789 So.2d 649, 653; *Theodore v. Krazy Korner,* [20]12-0173 (La. App. 4 Cir. 5/23/12), 95 So.3d 572, 574-575.

2013-1423, pp. 3-4 (La. App. 4 Cir. 4/2/14), 140 So.3d 55, 57-58. We address each factor, in turn, below.[19]

*(1) Valid Contract between the Parties*

In *Tate v. Progressive Sec. Ins. Co.*, the plaintiff, a motorist who was rear-ended by a truck driver hauling a load of sand, sued the owner of the company for whom the truck driver was hauling the sand and alleged that the truck driver was an employee; the trial court found and this Court affirmed that the truck driver was

---

[19] The Louisiana Supreme Court, in *Hillman*, explained that the "jurisprudentially crafted test for determining whether an employer-employee relationship exists can be traced back to *Alexander v. J.E. Hixson & Sons Funeral Home,* 44 So.2d 487 (La. App. 1st Cir.1950)," which was "then set forth in 35 Am.Jur. § 3." 2001-1140, p.8 (La. 1/15/02), 805 So.2d 1157, 1162.

an independent contractor. 2008-0950, p. 9 (La. App. 4 Cir. 1/28/09), 4 So.3d 915, 920. In *Tate*, the plaintiff relied on *Hickman* and argued that "a written contract is a *sine qua non* of an independent contractor relationship and that there is no written contract in the instant case." *Id*. This Court, in *Tate*, found no requirement that a contract be in writing.

In the instant matter, Allstate argues that no contract, either oral or written, existed between Mr. Pilet and Pilet Distributors and/or Steve Pilet. However, Mr. Pilet argues that there was, in fact, an oral contract between he and Steve Pilet. Because Steve Pilet is deceased, and there is no other evidence to support or controvert whether there was a contract between Mr. Pilet and Pilet Distributors and/or Steve Pilet, this question turns on a credibility determination concerning whether Mr. Pilet is being credible when he states that a contract existed.[20]

*(2) Independent Nature of the Work*

The second factor—work of an independent nature and allows for completion through non-exclusive means, along with the third factor—the degree of control exercised by the principal and calls for a specific piecework as a unit— should be analyzed together. *Kibodeaux v. Progressive Ins. Co.*, 2008-791, p. 4 (La. App. 3 Cir. 2/4/09), 4 So.3d 222, 226. The independent nature of the work turns not on the supervision or control actually exercised, but whether, based on

---

[20] "A court cannot make credibility determinations on a motion for summary judgment…." *Phelps Dunbar, L.L.P. v. Stout*, 2004-0785, p. 5 (La. App. 4 Cir. 6/15/05), 914 So.2d 44, 47; *See Independent Fire Insurance Co. v. Sunbeam Corp.,* 1999-2181, pp. 16-17, 755 So.2d at 236.

the nature of the relationship, the right to do so exists. *Hickman*, 262 So.2d 385, 391 (La. 1972). The inquiry is essentially whether the individual has "freedom of action in performing the work required of him." *Id.* Stated in a different manner, the inquiry here is whether the "work [can] be done according to the contractor's own methods without being subject to control and direction, except as to the result of the services to be rendered." *Smith*, 2017-0003, p. 6, 222 So.3d at 766. In the instant matter, Mr. Pilet asserts that Steve Pilet gave him basic instructions, such as the route for the day, but that he had the freedom or independence to determine the manner in which he performed the work. Mr. Pilet asserts that Steve Pilet only controlled the result of the deliveries. Mr. Pilet's work days, from 7:00 a.m. to 3:00 p.m. or 4:00 p.m., were determined by the deliveries that had to be made; on each day, he made twelve (12) deliveries except on Thursdays when he made fifteen (15) deliveries typically to the same locations each day. Although Mr. Pilet's work hours were not set by Steve Pilet and/or Pilet Distributors, but rather by the daily deliveries, those daily deliveries were determined by Steve Pilet and/or Pilet Distributors, not Mr. Pilet. Further, although certain deliveries were expected to be delivered by certain times, Mr. Pilet had the freedom or independence to choose the routes between deliveries.

(2) *Contract Allows for Work to be Done According to Contractor's Own Methods*

Among the factors that this Court relied upon in *Tate* to determine that the truck driver was an independent contractor was that he "owned, maintained and

12

insured his own truck." 2008-0950, p. 12 (La. App. 4 Cir. 1/28/09), 4 So.3d 915, 922.

In the instant matter, Steve Pilet and/or Pilet Distributors owned, insured, and maintained the truck that Mr. Pilet used to complete the deliveries on behalf of the company. Additionally, Steve Pilet and/or Pilet Distributors provided Mr. Pilet with the equipment needed to complete the deliveries—the hand truck.

*(3) Specific Price*

In *Hickman*, the truck driver was paid once per month based on the weight of each load pursuant to his contract. Additionally, no deductions for Social Security or income taxes were withheld from his check. Although the truck driver owned, insured, and maintained his own truck, his employer dictated his daily report time and routes. The truck driver loaded his own truck and completed deliveries. Under those facts, the Louisiana Supreme Court determined that the truck driver was an employee, not an independent contractor.

Conversely, in *Tate*, the truck driver was paid per load and paid weekly. Additionally, he received a 1099 form and no Social Security or federal taxes were withheld from his check. The truck driver owned, insured, and maintained his own truck. He was free to work whenever he chose and was not required to call and report on the days that he chose not to work. This Court found that the truck driver was an independent contractor.

In the instant case, Mr. Pilet asserts that he was neither paid hourly nor by salary; instead, he was paid $400.00 in cash per week. Mr. Pilet never completed a

W-2 and taxes were not withheld. Mr. Pilet insists that he was "helping" Steve Pilet.

*(4) Duration of Work*

This factor examines whether the work an individual was engaged to perform was for a specific period of time or was terminable at the will of either party. *Burleigh v. Lee*, 2017-0335, p. 9 (La. App. 1 Cir. 3/12/18), 2018 WL 1279830. Further, "[i]t has been held that being terminable at the will of either party, alone, is sufficient, when considering the other circumstances of the employment, to signify that the contract created a relationship of master and servant." *Id.*; *Amyx v. Henry & Hall*, 227 La. 364, 375, 79 So. 2d 483, 487 (1955). Further, "it has been found that the right to terminate the relationship without cause, where no term of employment is prescribed, is characteristic of the master and servant or employer-employee relationship. The right is at the same time antagonistic to the independent contractor relationship." *Id.*; *Hickman*, 262 La. at 119, 262 So. 2d at 391; *see also Hughes v. Goodreau*, 2001-2107, p. 11 (La. App. 1st Cir. 12/31/02), 836 So. 2d 649, 658-59, *writ denied*, 2003-0232 (La. 4/21/03), 841 So. 2d 79 (wherein the court pointed out that the "most telling [fact]" defining the relationship of an employer and worker is the duration of work factor).

In the instant matter, Mr. Pilet admitted that he had agreed to work for Pilet Distributors while Steve Pilet was undergoing chemotherapy treatment and was unable to make the deliveries, i.e., on a temporary basis. At the time of the accident, Mr. Pilet had been working for Pilet Distributors for approximately

eighteen (18) months and had he not sustained injuries, he would have continued to work for the company. Mr. Pilet further admitted that he could be terminated by Steve Pilet at will. However, Mr. Pilet asserts that it was unlikely that Steve Pilet would have terminated him because Steve Pilet was in great need of assistance completing deliveries while he underwent chemotherapy treatment.

The totality of the evidence bearing on the factors herein-above particularly whether a contract existed, the independent nature of the work, the right of control and supervision and whether the employment was terminable at will, was for a specified time period, or was temporary, is conflicting. We find that the contradictions in the evidence present genuine issues of material facts pertinent to the determination of whether Mr. Pilet was an employee or independent contractor. Summary judgment based on the employee injury exclusion is thus improper.

### *Worker's Compensation Exclusion*

Allstate alternatively argued that even if factual questions remain as to whether Mr. Pilet was an employee or an independent contractor, coverage is still precluded by the worker's compensation exclusion.

"The workers' compensation act extends to independent contractors if a 'substantial part of the work of [the] independent contractor is spent in manual labor by him in carrying out the terms of the contract.'" *Smith*, 2017-0003, p. 8, 222 So.3d at 767 referencing La. R.S. 23:1021(7).[21] Manual labor means that the

---

[21] La. R.S. 23:1021(7) provides:

> (7) "Independent contractor" means any person who renders service, other than manual labor, for a specified recompense for a specified result either as a unit or as a whole, under the control of

physical aspect of a job predominates over the mental aspect. *Id.* "Whether a substantial part of one's job involves manual labor is a factual determination addressed on a case-by-case basis." *Id.* at 768.

In applying the aforementioned to the present, it is apparent that Mr. Pilet was a truck driver as contemplated by La. R.S. 23:1021(7), i.e., he possessed a CDL and he testified that he would drive the deliveries from place to place. However, what remains unclear is whether manual labor was a substantial part of Mr. Pilet's work. There was limited evidence elicited to support or controvert this fact. Moreover, because this is a case-by-case, fact-intensive inquiry, and substantial facts are absent to make this determination, we find that under the worker's compensation exclusion, summary judgment is inappropriate.

Thus, based on the conflicting evidence presented for both coverage exclusions offered by Allstate, we find that Mr. Pilet's assignment of error has merit and that summary judgment should have been denied by the trial court.

## DECREE

For the aforementioned reasons, we reverse the trial court's grant of summary judgment and remand this matter for further proceedings.

---

his principal as to results of his work only, and not as to the means by which such result is accomplished, and are expressly excluded from the provisions of this Chapter unless a substantial part of the work time of an independent contractor is spent in manual labor by him carrying out the terms of the contract, in which case the independent contractor is expressly covered by the provisions of this Chapter. The operation of a truck tractor or truck tractor trailer, including fueling, driving, connecting and disconnecting electrical lines and air hoses, hooking and unhooking trailers, and vehicle inspections are not manual labor within the meaning of this Chapter.

**REVERSED AND REMANDED**