# STATE OF LOUISIANA

# COURT OF APPEAL

# FIRST CIRCUIT

## 2023 CA 0943

JOHN ROBINSON, JR.

VERSUS

PELICAN WASTE & DEBRIS, LLC, PRIME INSURANCE COMPANY
AND JAMIE DELASBOUR

Judgment Rendered: **SEP 0 3 2024**

* * * * * *

On Appeal from the Sixteenth Judicial District Court
In and for the Parish of St. Mary
State of Louisiana
Docket No. 134982

Honorable Vincent J. Borne, Judge Presiding

* * * * * *

| | |
|---|---|
| Jason M. Welborn<br>Jacob H. Hargett<br>Lafayette, Louisiana | Counsel for Plaintiff/Appellee<br>John Robinson, Jr. |
| J. Geoffrey Ormsby<br>Andre M. Stolier<br>New Orleans, Louisiana | Counsel for Defendants/Appellants<br>Pelican Waste & Debris, LLC, Prime<br>Insurance Company, and Jamie<br>Delasbour |

* * * * * *

**BEFORE:  McCLENDON, HESTER, AND MILLER, JJ.**

**McCLENDON, J.**

In this case arising out of a motor vehicle collision, the defendants appeal the judgment of the trial court rendered after a jury verdict in favor of the plaintiff. The defendants also appeal the trial court's judgment denying their motion for new trial and the trial court's judgment granting the plaintiff's motion to assess court costs. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

On August 9, 2019, at about 6:20 p.m., John Robinson, Jr. was driving his 2010 Ford F-150 pickup truck in Baldwin, Louisiana, behind a 2016 Mack garbage truck being operated by James Delasbour. Mr. Delasbour was in the course and scope of his employment with Pelican Waste & Debris, LLC (Pelican). The Pelican truck was thirty-six feet long and weighed 36,000 pounds. Realizing that he did not have enough space to make a right turn from Lincoln Street onto Haven Street, Mr. Delasbour put the garbage truck in reverse and began backing up. Mr. Delasbour failed to see Mr. Robinson stopped in his pickup truck behind the garbage truck and collided into the front of Mr. Robinson's vehicle. The garbage truck was backing up at a speed of approximately five miles per hour.[1]

On July 20, 2020, Mr. Robinson filed a Petition for Damages in the 16th Judicial District Court in St. Mary Parish against Mr. Delasbour, Pelican, and its insurer, Prime Insurance Company, seeking damages for the injuries he suffered to his neck and low back as a result of the negligence of Mr. Delasbour. Subsequently, the defendants stipulated that Mr. Delasbour was "100% at fault" for causing the accident.

On September 16, 2022, the defendants filed a motion *in limine* to exclude the testimony of Mr. Robinson's expert, Dr. David J. Barczyk. Mr. Robinson opposed the motion, arguing that Dr. Barczyk is a chiropractor, injury bio-mechanics expert, and a certified accident reconstructionist, whose testimony would be more than helpful to the

---

[1] Mr. Delasbour testified that he backed up approximately five to six feet when he hit Mr. Robinson's vehicle and pushed it "back like a football sled" for about six feet. Mr. Delasbour also stated that a "governor" on the garbage truck prevented it from exceeding five miles per hour when in reverse. In contrast, Mr. Robinson estimated that the garbage truck backed up about seventy-five feet before it hit his truck. Police Sgt. Joseph Garrison, who investigated the accident, described the damage to the front of Mr. Robinson's truck as "moderate to severe."

jury's assessment of medical causation, and who was retained specifically to explain to the jury the mechanics of the spine and the biodynamics of impact force. Following a hearing on October 25, 2022, the trial court denied the defendants' motion *in limine*.

Thereafter, the case proceeded to a four-day jury trial beginning on November 28, 2022. On December 1, 2022, the jury rendered a unanimous verdict, finding that the motor vehicle crash of August 9, 2019, was a cause of the injuries complained of by Mr. Robinson. With regard to special damages, the jury awarded Mr. Robinson $30,000.00 for past medical expenses, $223,000.00 for future medical expenses, $2,700.00 for past loss of earnings, and $20,000.00 for future loss of earnings. As to general damages, the jury awarded $50,000.00 for past physical pain and suffering, $80,000.00 for future physical pain and suffering, $50,000.00 for past mental and emotional anguish, $50,000.00 for future mental and emotional anguish, and $50,000.00 for loss of enjoyment of life. The jury award totaled $555,700.00. On December 12, 2022, the trial court signed a judgment in accordance with the jury's verdict.

On December 21, 2022, Mr. Robinson filed a Motion to Assess Court Costs and to Enforce Offer of Judgment.[2] On December 27, 2022, the defendants filed a Motion for Judgment Notwithstanding the Verdict, or Alternatively, Motion for New Trial. Thereafter, on February 13, 2023, the trial court held a hearing on both motions. That same day, the trial court signed a judgment denying the defendants' Motion for Judgment Notwithstanding the Verdict, or Alternatively, Motion for New Trial and also signed a separate judgment granting Mr. Robinson's Motion to Assess Court Costs and to Enforce Offer of Judgment.

The defendants suspensively appealed the December 12, 2022 judgment on the merits, as well as the February 13, 2023 judgment denying their motion for new trial and the February 13, 2023 judgment granting Mr. Robinson's motion to tax costs.[3] In their

---

[2] In accordance with LSA-C.C.P. art. 970, Mr. Robinson submitted an offer of judgment to the defendants in the amount of $325,000.00 for the purpose of settling all claims between them. The offer was never accepted, and Mr. Robinson obtained a verdict that was "at least twenty-five percent greater than the amount of the Offer."

[3] We note that the defendants failed to brief any issue as to the February 13, 2023 judgment granting Mr. Robinson's motion to tax costs. Uniform Rules – Courts of Appeal, Rule 2-12.4(B)(4) provides that "[a]ll assignments of error and issues for review shall be briefed. The court may deem as abandoned any assignment of error or issue for review which has not been briefed." Therefore, in accordance with Rule 2-12.4(B)(4), we consider the defendants' appeal of the February 13, 2023 judgment granting Mr.

appeal, the defendants assert that the trial court erred in 1) denying their motion *in limine* and permitting Dr. Barczyk to testify at trial; 2) awarding Mr. Robinson special damages for future medical expenses and for future lost wages related to a surgery that Mr. Robinson did not prove more probably than not that he will undergo; and 3) denying their motion for new trial.[4]

## DISCUSSION

<u>Dr. Barczyk's Testimony</u>

Generally, the trial court is granted broad discretion in making evidentiary rulings, including the admission and scope of expert testimony, and its determinations will not be disturbed on appeal absent a clear abuse of discretion. **Giavotella v. Mitchell**, 2019-0100 (La.App. 1 Cir. 10/24/19), 289 So.3d 1058, 1069-70, <u>writ denied</u>, 2019-01855 (La. 1/22/20), 291 So.3d 1044. However, if a trial court commits evidentiary error that interdicts its factfinding process, this court must conduct a *de novo* review. Thus, any alleged evidentiary errors must be addressed first on appeal, inasmuch as a finding of error may affect the applicable standard of review. **Thompson v. Transocean Offshore Deepwater Drilling, Inc.**, 2019-0440 (La.App. 1 Cir. 2/21/20), 293 So.3d 80, 84, <u>writ denied</u>, 2020-00802 (La. 10/14/20), 302 So.3d 1115.

In their first assignment of error, the defendants contend that the trial court erred in denying their motion *in limine* and allowing Dr. Barczyk to testify at trial in light of the unreliability and prejudice apparent in his expert report. Additionally, the defendants aver that when the trial court denied the motion *in limine*, it failed to provide detailed reasons for its decision in violation of LSA-C.C.P. art. 1425(F). Because of this alleged failure, the defendants contend that we must review the admissibility of Dr. Barczyk's

---

Robinson's Motion to Assess Court Costs and to Enforce Offer of Judgment to have been abandoned. <u>See</u> **Perkins v. BBRC Investments, LLC**, 2014-0298 (La.App. 1 Cir. 10/17/14), 205 So.3d 930, 932.

[4] Herein, the defendants specifically appealed the denial of the motion for new trial. Generally, the denial of a motion for new trial is an interlocutory and non-appealable judgment. <u>See</u> LSA-C.C.P. art. 2083. However, the Louisiana Supreme Court has directed us to consider an appeal of the denial of a motion for new trial as an appeal of the judgment on the merits as well, when it is clear from the appellants' brief that they intended to appeal the merits of the case. **Jackson v. Wise**, 2017-1062 (La.App. 1 Cir. 4/13/18), 249 So.3d 845, 849-50, <u>writ denied</u>, 2018-0785 (La. 9/21/18), 252 So.3d 914. Furthermore, when an unrestricted appeal is taken from a final judgment, the appellant is entitled to seek review of all adverse interlocutory rulings prejudicial to him, in addition to the review of the final judgment. **Jackson**, 249 So.3d at 850. Thus, the interlocutory denial of a motion for new trial is subject to review on appeal in connection with the review of an appealable judgment in the same case.

4

expert testimony *de novo* and find that Dr. Barczyk's testimony should have been excluded as it unfairly prejudiced the defendants and resulted in the jury's finding that the accident caused Mr. Robinson's injuries. Therefore, as a preliminary matter, we will first address the defendants' contention that the trial court committed legal error in failing to comply with Article 1425(F).

Louisiana Code of Civil Procedure article 1425(F)(3) provides, in pertinent part, that if the ruling of the trial court is made at the conclusion of the hearing, as here, the court shall recite orally its findings of fact, conclusions of law, and reasons for judgment. The defendants assert that the trial court failed to provide reasons for its judgment that specifically addressed the elements of LSA-C.E. arts. 702-705 as required by LSA-C.C.P. art. 1425(F)(4). However, Mr. Robinson argues that the trial court specifically addressed the factors at issue.

Louisiana Code of Civil Procedure article 1425(F)(4) provides:

> The findings of facts, conclusions of law, and reasons for judgment shall be made part of the record of the proceedings. The findings of facts, conclusions of law, and reasons for judgment shall specifically include and address:
>
> (a) The elements required to be satisfied for a person to testify under Articles 702 through 705 of the Louisiana Code of Evidence.
>
> (b) The evidence presented at the hearing to satisfy the requirements of Articles 702 through 705 of the Louisiana Code of Evidence at trial.
>
> (c) A decision by the judge as to whether or not a person shall be allowed to testify under Articles 702 through 705 of the Louisiana Code of Evidence at trial.
>
> (d) The reasons of the judge detailing in law and fact why a person shall be allowed or disallowed to testify under Articles 702 through 705 of the Louisiana Code of Evidence.

In this matter, at the start of the hearing on the motion *in limine*, the defendants' counsel set forth its argument regarding the issue before the trial court. In response, the trial court stated: "I understand your position, but it's obviously the question you're trying to say is that based upon the circumstances you point out, he shouldn't be able to get past the **Daubert**[5] test to give an opinion because it's unreliable his methodology."

---

[5] **Daubert v. Merrell Dow Pharmaceuticals, Inc.**, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

5

Counsel for Mr. Robinson then gave his argument and called Dr. Barczyk to testify. At the conclusion of Dr. Barczyk's testimony, the trial court's reasons were, as follows:

> So y'all want me to rule on the motion in limine? Y'all made [your] arguments. I get what's going on.
>
> So with [regard] to the motion in limine, I note the arguments of the defense with [regard] to the issues brought out here. The record is clear what their arguments are. I do find that based upon the report by Dr. Barczyk, I do find that there's appropriate expertise that he possesses and his methodology is such that he's able to render the opinion contained in his report that's part of the record. So I deny the motion in limine.
>
> I find that all – I note all the objections and I think those go more to the weight than they did admissibility.

Although the trial court recognized its gatekeeping function, its reasons were scant and do not seem to conform to the requirements of LSA-C.C.P. art. 1425(F). Nor do they reflect that the trial court conducted an analysis of the **Daubert** factors set forth in LSA-C.E. art. 702. See **Carpenter v. Thomas**, 2022-0872 (La.App. 1 Cir. 3/13/23), 362 So.3d 977, 982. Pursuant to LSA-C.C.P. art. 1425(F)(3), if the trial court issues a ruling on the motion at the conclusion of the contradictory hearing, the court *shall* recite orally its findings of fact, conclusions of law, and reasons for judgment. The failure to comply with this provision is legal error, and we must therefore review the admissibility of Dr. Barczyk's opinion *de novo.* See **Carpenter**, 362 So.3d at 982.

The United States Supreme Court established the standard for determining the admissibility of expert testimony in **Daubert v. Merrell Dow Pharmaceuticals, Inc.**, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). This standard is codified in LSA-C.E. art. 702. **Lee v. Louisiana Board of Trustees for State Colleges**, 2017-1433 (La.App. 1 Cir. 3/13/19), 280 So.3d 176, 186, writ denied, 2019-01647 (La. 1/14/20), 291 So.3d 690. Article 702 provides, in pertinent part:

> A. A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (1) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (2) The testimony is based on sufficient facts or data;
>
> (3) The testimony is the product of reliable principles and methods; and

6

(4) The expert has reliably applied the principles and methods to the facts of the case.

Article 702(A) creates a five-element test for the admissibility of expert testimony, first requiring the witness be "qualified as an expert by knowledge, skill, experience, training, or education," and then enumerating four requirements for the testimony's reliability and relevance. **Blair v. Coney**, 2019-00795 (La. 4/3/20), 340 So.3d 775, 780. Failure of the witness to qualify as an expert or failure of the testimony to meet any one of the enumerated indicia of reliability or relevancy renders the testimony inadmissible. **Id.**; see also LSA-C.E. art. 702, Comments-1988, comment (c) ("[u]nder this Article whether expert testimony is admissible turns upon whether it would assist the trier of fact to understand the evidence or to determine a fact in issue").

The relaxation of the usual requirement that a witness have firsthand knowledge and the permission granted to an expert to express opinions not based on firsthand knowledge or observation is premised on an assumption that the expert's opinion will have a reliable basis in the knowledge and experience of the discipline. **Blair**, 340 So.3d at 781. On the other hand, vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence. Moreover, in the context of claims related to vehicular collisions, where the force of impact in a collision lowers, and the alleged seriousness of the injury rises, expert testimony becomes more relevant. **Id**. See also **Fussell v. Roadrunner Towing and Recovery, Inc.**, 99-0194 (La.App. 1 Cir. 3/31/00), 765 So.2d 373, 376, writ denied, 2000-1264 (La. 6/23/00), 765 So.2d 1042.

Pertinent to this matter, the defendants did not take issue with Dr. Barczyk's credentials at the hearing on the motion *in limine*, but rather with the reliability of his expert report.[6] The defendants specifically argued that Dr. Barczyk did not examine Mr.

---

[6] We note that Dr. Barczyk attached to his expert report his curriculum vitae. According to his curriculum vitae, Dr. Barczyk is a chiropractic physician, licensed by the state boards of chiropractic examiners in Louisiana and South Carolina. His post-graduate training includes treatment of cervical spine trauma, whiplash and spinal trauma, and injuries in low impact collisions. Additionally, Dr. Barczyk has undergone training in crash biomechanics and accident reconstruction. Dr. Barczyk included an extensive history as a lecturer regarding the mechanisms of injury and biomechanics, as well as an extensive compilation of cases, between 2004 and 2020, where Dr. Barczyk was retained as an expert witness. Nevertheless, having been qualified as an expert witness in other cases, is not determinative of whether he was qualified to testify as an expert witness in the case presently before us.

7

Robinson until three years after the accident and did not have the ability to see the vehicles or inspect the accident scene. As such, the defendants contended that Dr. Barczyk's report lacked sufficient facts and data as required by LSA-C.E. art. 702 to allow his expert opinion. Mr. Robinson argued, however, that Dr. Barczyk's testimony was reliable and would help the jury understand how the mechanics of the spine operate based on a direction of force.

In support of their argument, the defendants rely on the **Blair** case, wherein the defendants in that matter sought to introduce at trial the expert opinion of Dr. Charles Bain in an effort to disprove a causal connection between the plaintiff's injuries and the collision at issue. **Blair**, 340 So.3d at 777. However, Dr. Bain did not interview the plaintiff, did not know the plaintiff's body position at the time of the rear-end collision, and did not inspect the vehicles. The Supreme Court found that Dr. Bain made certain assumptions about the plaintiff's posture, which were nothing short of conjecture, and also found it significant that Dr. Bain did not inspect the vehicles involved, relying instead on photographs and damage estimates, to calculate the force of impact of the underlying collision. **Blair**, 340 So.3d at 784-85. The Supreme Court reversed the appellate court, finding that the district court did not abuse its discretion in concluding that Dr. Bain's testimony was based on insufficient facts or data, thus failing to meet the requirement of LSA-C.E. art. 702(A)(2). **Blair**, 340 So.3d at 785-86.

We first note that in this case, Dr. Barczyk was not asked to determine the force of impact, but rather was accepted at trial as an expert in the fields of crash biomechanics, occupant kinematics, and chiropractic care. Moreover, Dr. Barczyk did examine and interview Mr. Robinson. Dr. Barczyk stated in his August 26, 2022 report that he met with Mr. Robinson on August 22, 2022, for examination and biomechanical evaluation for injuries he sustained in a motor vehicle collision on August 9, 2019. Mr. Robinson provided information to Dr. Barczyk that he was the driver of the truck "that was struck at the front by a garbage truck that was accelerating rearward"; that Mr. Robinson's truck was stopped at the moment of impact; that Mr. Robinson was wearing his seatbelt; and that Mr. Robinson's body position inside the vehicle was leaning slightly to the right with his right elbow on the center console and his left hand on the steering wheel. Mr.

8

Robinson also explained to Dr. Barczyk that he was startled by the garbage truck reversing, so he honked his horn and turned to try to put his truck in reverse, but did not have time before impact.

Dr. Barczyk's report included a discussion of Mr. Robinson's previous history as reported by Mr. Robinson; Dr. Barczyk's physical examination of Mr. Robinson; the injury mechanism to Mr. Robinson's cervical and lumbar spine; occupant risk factors; and Dr. Barczyk's methodology. Dr. Barczyk also listed the records he reviewed for his biomechanical evaluation, which included photographs of the accident; the deposition of Mr. Robinson; the deposition of Dr. Lon Baronne, Mr. Robinson's expert in orthopedic spine surgery; the property damage estimate; the police report; the Pelican Waste incident report; the ambulance report; and Mr. Robinson's lumbar and cervical MRIs. Dr. Barczyk also reviewed the medical records of Dr. Lon Baronne; Dr. Benjamin Baronne; Courtney Priola, NP; Envision Imaging; Dr. Thomas V. Bertuccini; Dr. Robert Franklin; Franklin Foundation Hospital; Aaron Blanchard, PA; P.T. Clinic of Franklin; and Park Place Surgery Center. Finding objective evidence of tissue damage to the lumbar and cervical spine, as well as degenerative changes in Mr. Robinson's spine, Dr. Barczyk concluded:

> Based on my interview and examination of Mr. Robinson, the police report, property damage analysis and estimates, conservation of linear momentum, Newton's laws, injury mechanism, the patient's medical records and prior condition (including evidence of tissue damage), Mr. Robinson's cervical and lumbar disc injuries are causally related to the motor vehicle collision on August 9, 2019.

Additionally, Dr. Barczyk testified at the hearing on the motion *in limine*, stating that he was an expert in biomechanics and occupant kinematics, as well as a certified accident reconstructionist expert.[7] Dr. Barczyk explained:

> So occupant kinematics and I'll call it crash biomechanics is fairly large and mine is motor vehicle crash biomechanics, so how the human body moves when vehicles collide regardless of the types of vehicles. And that allows me with my chiropractic training obviously and licensure allows me to describe the movements of the spine and the movements of an occupant in the crash and try to determine if the injuries they're reporting are related to that incident.

---

[7] At trial, Dr. Barczyk estimated that he has testified in court in between twenty and thirty-five cases as an expert in biomechanics or occupant kinematics.

Dr. Barczyk testified that he first reviewed the photographs, Mr. Robinson's deposition, the police report, and damage estimates to address the principal direction of force and how the accident occurred, including the occupant movements. He stated he then looked at the medical records and found objective physical evidence of tissue damage to support the occupant's subjective complaints.

However, the defendants continue to maintain that because Dr. Barczyk's opinion did not include the force of the impact, Dr. Barczyk could not testify whether the amount of the force was sufficient to cause injuries. They further contend that Dr. Barczyk's testimony regarding direction of force was unnecessary because that fact was undisputed. Therefore, according to the defendants, Dr. Barczyk could not state with any reliability or expertise that the accident at issue caused Mr. Robinson's injuries.

As to methodology, Dr. Barczyk stated in his report that he applied the principles of physics, biomechanics, and occupant kinematics to Mr. Robinson on an individual basis. He further explained that the principles and risk analysis comprising the methodology underlying his expert opinions have been tested, are based on scientific literature, and have been subjected to peer review as shown in the forty-six publications he referenced at the end of his report. Besides interviewing and examining Mr. Robinson, Dr. Barczyk considered several pre-crash, actual crash, and post-crash details in determining causation.

At trial, Dr. Barczyk testified that he was asked to review the case and information to determine if the injuries claimed by Mr. Robinson were likely or probable. He explained his methodology, the records and documents reviewed, as well as his examination of Mr. Robinson. Dr. Barczyk discussed the kinematics, or movement, of Mr. Robinson's body in the crash; the forward flexion of Mr. Robinson's head and neck, causing compression of the disc; the seatbelt's lack of protection to the spine; and that the flexion and compression of the lumbar spine, together with the fact that Mr. Robinson was leaning to the right, exposed the discs to shear forces.

Based on our review, we find that Dr. Barczyk's testimony regarding biomechanics and occupant kinematics was reliable and relevant to explain the mechanics of Mr. Robinson's injuries. Unlike the expert in **Blair**, Dr. Barczyk repeatedly testified that he

10

was not calculating the impact of the collision, but rather testified to explain how the body moves when involved in a motor vehicle collision.[8]  In other words, he was asked to determine the biomechanics of the accident.  Also, unlike the expert in **Blair**, who did not interview the plaintiff, Dr. Barczyk made no assumptions about Mr. Robinson's body position as the occupant of the truck at the time of the collision, having obtained the information from Mr. Robinson.  Dr. Barczyk knew how Mr. Robinson was positioned and what he was doing at the time of the accident.  Dr. Barczyk's testimony was based on sufficient facts and data and was the product of reliable principles and methods that he relied on in forming his opinions in this matter at the hearing on the motion *in limine* and at trial.  Any alleged failure to visit the scene of the accident or supply specific facts in the analysis or conclusion of Dr. Barczyk's report provided a basis for attack on cross-examination.  See **Fussell**, 765 So.2d at 377.  We find no prejudicial error in allowing Dr. Barczyk to testify as an expert at trial in the field of biomechanics and occupant kinematics.

Moreover, even if Dr. Barczyk should not have been allowed to testify, we would not disturb the jury's verdict given the consistent testimony and evidence of record on the issue of causation from the treating physicians of Mr. Robinson, as well as from the defendants' own independent medical examiner, Dr. Thomas Bertuccini.  Dr. Bertuccini, an expert in neurosurgery, examined Mr. Robinson on October 13, 2021, and acknowledged that Mr. Robinson was injured, more likely than not, in the August 9, 2019 accident, although Dr. Bertuccini disagreed on the need for surgery.

The jury clearly rejected the defendants' argument that the low speed of the crash could not have caused Mr. Robinson's injuries.  Accordingly, we find no merit to this assignment of error.

Future Medical Expenses

In their second assignment of error, the defendants assert that the trial court erred in awarding Mr. Robinson special damages for future medical expenses and lost wages related to a surgery that is "merely elective" and one that Mr. Robinson did not prove

---

[8] We note that in this case, Dr. Barczyk was not admitted as an expert accident reconstructionist.

11

more probably than not that he would undergo. The defendants did not appeal the award of general damages.

The term "damages" refers to pecuniary compensation, recompense, or satisfaction for an injury sustained. Compensatory damages are divided into the broad categories of special damages and general damages. **Wainwright v. Fontenot**, 2000-0492 (La. 10/17/00), 774 So.2d 70, 74. Special damages are those which have a ready market value, such that the amount of the damages theoretically may be determined with relative certainty, including medical expenses and lost wages. **McGee v. A C and S, Inc.**, 2005-1036 (La. 7/10/06), 933 So.2d 770, 774.

The proper standard for determining whether a plaintiff is entitled to future medical expenses is proof by a preponderance of the evidence the future medical expense will be medically necessary. **Menard v. Lafayette Ins. Co.**, 2009-1869 (La. 3/16/10), 31 So.3d 996, 1006; **Waters v. Hebert**, 2019-0435 (La.App. 1 Cir. 11/20/19), 291 So.3d 278, 282. Further, a plaintiff must establish that future medical expenses will more probably than not be incurred. **Menard**, 31 So.3d at 1006. An award of future medical expenses is justified if there is medical testimony that they are indicated and that sets out their probable cost. **Hanks v. Seale**, 2004-1485 (La. 6/17/05), 904 So.2d 662, 672. See also **Menard**, 31 So.3d at 1006.

However, an award for future medical expenses is, in great measure, highly speculative, not susceptible to calculation with mathematical certainty, and generally turns on questions of credibility and inferences. A jury's decision regarding special damages is subject to the manifest error standard of review, which only allows an appellate court to adjust a special damage award where there is no reasonable factual basis for the jury's decision and the decision is clearly wrong. **Waters**, 291 So.3d at 282.

Further, the rule that questions of credibility are for the trier of fact applies to the evaluation of expert testimony, unless the stated reasons of the expert are patently unsound. Credibility determinations, including the evaluation of and resolution of conflicts in expert testimony, are factual issues to be resolved by the trier of fact, which should not be disturbed on appeal in the absence of manifest error. **Hanks v. Entergy Corp.**, 2006-477 (La. 12/18/06), 944 So.2d 564, 580-81.

12

In this matter, Mr. Robinson went to his primary care physician, Dr. Robert Franklin on August 26, 2019. Mr. Robinson complained of neck, upper back, bilateral hand, and low back pain, as well as headaches with his neck and back pain that he described as severe and constant. Mr. Robinson also reported to Dr. Franklin that he had no neck or back pain before the August 9, 2019 accident. At trial, Dr. Franklin testified that on this visit Mr. Robinson was posturing in a way that demonstrated an avoidance of pain. Dr. Franklin's examination of Mr. Robinson was consistent with Mr. Robinson's complaints, and Dr. Franklin ordered an MRI of the back and of the neck, as well as a follow-up with Dr. Lon Baronne.

Dr. James Godchaux, admitted as an expert in radiology, reviewed Mr. Robinson's MRIs performed on September 16, 2019. As to the cervical MRI, Dr. Godchaux testified that there was a broad base bulge and annular tear at the C3-4 level and a herniation with mild stenosis at the C4-5 level. Also, regarding the lumbar MRI, he testified that there was a bulge and stenosis at the L4-5 level and a bulge with an annular tear at the L5-S1 level. Dr. Godchaux further testified that a second lumbar MRI on November 22, 2021, showed a significant progression from the earlier MRI at the L4-5 level.

Dr. Lon Baronne, an expert in orthopedic spine surgery, first examined Mr. Robinson on October 1, 2019. Dr. Baronne testified to his objective findings, which he found to be consistent with Mr. Robinson's complaints. Mr. Robinson had multiple levels of disc pathology, and Dr. Baronne found Mr. Robinson to be truthful and did not believe he was exaggerating. Mr. Robinson reported that although he was involved in a motor vehicle accident approximately twenty-five years previously and went to a chiropractor for a short time, he was not symptomatic before the August 9, 2019 accident at issue herein. Mr. Robinson also stated that he continued to work after the accident.

Dr. Baronne first recommended physical therapy and anti-inflammatory medications. At a second visit, Mr. Robinson informed Dr. Baronne that he was no longer responding to physical therapy and that his neck was improving, but that his back was not. By March of 2020, Mr. Robinson reported that his neck symptoms had resolved. Dr. Baronne ordered lumbar epidural steroid injections, which his brother, Dr. Benjamin Baronne performed.

13

In his opinion, Dr. Lon Baronne believed that it was more probable than not that Mr. Robinson suffered lumbar disc injury as a result of the accident at issue; that the disc pathology on the November 22, 2021 MRI was the natural progression of the original injury caused by the accident; and that the medical treatment he provided to Mr. Robinson was caused by the August 9, 2019 accident. By December of 2021, Dr. Baronne opined that a two-level lumbar fusion surgery, more probably than not, was necessary medical treatment for Mr. Robinson. Dr. Baronne also testified that Mr. Robinson would more probably than not need a second surgery in approximately fifteen to seventeen years, due to adjacent disc disease.

After Dr. Lon Baronne's surgery recommendation, Stephanie Chalfin, a vocational rehabilitation expert and life care planner, was asked to form a life care plan for Mr. Robinson. She conferenced with Dr. Lon Baronne who confirmed that more probably than not Mr. Robinson would need a two-level lumbar fusion surgery and that he would be off of work for several months thereafter. Ms. Chalfin obtained the costs for the surgical procedures, including the anesthesia, hospital, clinic, physical therapy, and lumbar brace, which totaled $222,947.40 for the two-level lumbar fusion and $174,709.93 for the second future surgery for adjacent disc disease. Dr. Baronne testified that the charges were reasonable and customary for these surgeries.

While the defendants presented the expert testimony of Dr. Bertuccini, who testified that Mr. Robinson did not need surgery, their main focus was that Mr. Robinson did not plan to ever have the lumbar fusion surgery. Therefore, the defendants contend that the jury erred in making an award for the future surgery and lost wages. When Dr. Baronne discussed the recommended surgery with Mr. Robinson in early 2022, Mr. Robinson agreed to undergo the operation. Mr. Robinson acknowledged at trial, however, that he did not have the surgery and did not know if he would have it, testifying that he did not know who would take care of his family if he had the fusion surgery.[9] He specifically stated that he was the breadwinner of his family and did not know who would pay his bills, including his mortgage, truck note, and insurance, if he had to take six

_____

[9] The surgery was rescheduled for December 23, 2022, shortly after the trial.

14

months off from work to recover. Mr. Robinson stated that he could not afford to do so. Therefore, he was hoping to be awarded the cost of the surgery before undergoing the back fusion.

The jury was presented with conflicting evidence as to whether the recommended surgery was medically necessary. The jury accepted the testimony of Mr. Robinson's treating doctors, finding that the lumbar fusion surgery was necessary, and rejected the testimony of the defendant's doctor, Dr. Bertuccini, that it was not.[10] Further, the jury clearly determined that Mr. Robinson intended to have the surgery as it awarded Mr. Robinson the cost of the surgery and $20,000.00 in future lost wages for six months of recovery following the two-level lumbar fusion surgery. However, the jury awarded Mr. Robinson the cost of the first surgery only, finding that the cost of the second surgery was not warranted. While we recognize that Mr. Robinson's testimony may have been somewhat equivocal as to whether he planned to have the surgery, he did not testify that he would never undergo the surgery; rather, he testified that he was scared, never having had any previous surgeries, and he was concerned for the financial well-being of his wife and daughter due to the fact that he would be off of work for several months following the surgery.

Based on the evidence presented, including Mr. Robinson's testimony that his symptoms began shortly after the accident and have continued, although there were periods of relief with the epidural steroid injections, we find that the jury's conclusion, that the two-level lumbar fusion surgery was medically necessary and more probably than not would be incurred, was not clearly wrong. The record provides a reasonable factual basis for these findings. Accordingly, we find no manifest error in the jury's award of special damages. This assignment of error is without merit.

Lastly, finding no error in the conclusions of the jury, we cannot say that the trial court abused its discretion in denying the defendants' Motion for Judgment Notwithstanding the Verdict, or Alternatively, Motion for New Trial. See **Rentrop v. Arch**

---

[10] Dr. Bertuccini testified that Mr. Robinson did not have the loss of neurological function, weakness, pain, or severe numbness that would make him a candidate for lumbar fusion surgery. Further, he did not believe that the progression of the disc injury in Mr. Robinson's lumbar spine was related to the original injury, but rather was the result of aging.

**Insurance Company**, 2017-0635 (La.App. 1 Cir. 12/29/17), 241 So.3d 357, 365. Therefore, we find no merit to this assignment of error.

## CONCLUSION

For the above reasons, we affirm the December 12, 2022 and February 13, 2023 judgments in favor of John Robinson, Jr. All costs of this appeal are assessed against the defendants, Pelican Waste and Debris, LLC, Prime Insurance Company, and Jamie Delasbour.

**DECEMBER 12, 2022 JUDGMENT AFFIRMED; FEBRUARY 13, 2023 JUDGMENT AFFIRMED.**